PYRAMID COMPANY OF HADLEY & others [1] *vs.* ARCHITECTURAL BARRIERS BOARD & others [2].

Suffolk.    April 6, 1988. — August 1, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Shopping Mall. Handicapped Persons. Administrative Law,* Judicial review. *Architectural Access Board.*

Substantial evidence supported the determination of the Architectural Barriers Board that handicapped persons would gain substantial benefit from elevator access to the mezzanine level of a certain shopping mall. [130-131]

In a proceeding before the Architectural Barriers Board, in which a shopping mall owner sought a variance from the board's regulations governing access to the mall by handicapped persons, where the board determined that compliance with the regulations would be of substantial benefit to handicapped persons, a cost-benefit analysis was not relevant. [131]

The determination by the Architectural Barriers Board, that an elevator rather than a wheelchair lift was required for compliance with its regulations governing handicapped persons' access to the mezzanine level of a certain shopping mall, was neither arbitrary nor capricious. [131]

CIVIL ACTION commenced in the Superior Court Department on September 3, 1986.

The case was heard by *Catherine A. White,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*William A. Horne* for the plaintiffs.

*Suzanne E. Durrell,* Assistant Attorney General (*Stanley E. Adelman* with her) for Architectural Barriers Board.

*Matthew Engel* for the interveners.

---

[1] Woodchuck Hill Associates; Robert V. Hunter, trustee of Bruce A. Kenan Living Trust; Thritee D. Baxter and Robert V. Hunter, trustees of Baxter Family Trust; Bruce A. Kenan, Joseph Scuderi, Leonard Leveen, Richard Schuliar, C. Daniel Shulman, Robert J. Congel, and Robert L. Ungerer, as general partners.

[2] Tim McCarthy, Seren Derin, Jim Weiss, Carla Kszaszycz, and the Disability Law Center, Inc., interveners.

LIACOS, J. In May, 1984, several handicapped individuals filed a complaint with the Architectural Barriers Board[3] (board) alleging numerous violations of the board's regulations governing access of handicapped persons to the Hampshire Mall, a shopping center owned by the Pyramid Company of Hadley (Pyramid). Pyramid then corrected many of the alleged violations and filed with the board a request for three variances from the board's regulations. One variance sought an exemption from the requirement of providing elevator access to the mezzanine level of the mall.

The board held an informal hearing and denied the requested variance regarding access to the mezzanine level.[4] After adjudicatory hearings before the full board, the board issued a formal decision denying the variance and ordered Pyramid to construct an elevator. On appeal to the Superior Court, a judge of that court affirmed the board's decision. Pyramid appealed, and we allowed the defendant's and interveners' application for direct appellate review.

The Hampshire Mall was built in 1978 and consists of two levels: the shopping level and the mezzanine level. There is no elevator or ramp connecting the two levels. The mezzanine level has administrative offices, a roller skating facility called "Interskate 91" which, when not being used for roller skating is used for aerobic exercise classes, and tenant space which has been rented to restaurants on an intermittent basis.

Over the course of three hearings conducted by the board, evidence was presented by handicapped individuals as to the benefits they would derive from access to the mezzanine level of the mall. There was testimony that handicapped persons were precluded from supervising their children or other children in their care, who were using the roller skating rink. Witnesses for Pyramid testified that there was insufficient space on the mezzanine level for people to watch, or to supervise, the skat-

---

[3] The Architectural Barriers Board was renamed the Architectural Access Board. St. 1986, c. 642, § 2.

[4] Pyramid withdrew one of its variance requests, and the board granted the remaining request.

ers. However, other testimony indicated that the skating area has "a very large seating area, there are vending machines up there, people can have drinks, have something to eat. There are video machines." Witnesses noted also that they had been unable to attend parties and other special functions to which they were invited. Two handicapped witnesses testified that they would like to attend the exercise classes held on the mezzanine level.

Witnesses for Pyramid testified that the cost of providing an elevator to the mezzanine level would be as much as $150,000. As an alternative to the elevator, Pyramid suggested the installation of a wheelchair lift. This proposal was opposed on the ground that such lifts do not offer comparable access, reliability and safety of operation, or independent use to all handicapped individuals.

The board ruled that the mall is a "public building" under G. L. c. 22, §13A (1986 ed.), and its regulations,[5] and further found and ruled, in pertinent part, that:

> "5. The Hampshire Mall consists of two levels, the main shopping level and a mezzanine level. The mezzanine level consists of a roller skating rink called 'Interskate 91' with a capacity of more than 150 people, a space used for aerobic exercise classes, and the administrative office for the Mall.
>
> "6. Elevator access to the second level is required under Section 14.1 of the 1977 Rules and Regulations of the Board.
>
> "7. The Hampshire Mall is in violation of the 1977 Regulations of the Board by virtue of the fact that handicapped access to the mezzanine level has not been provided.
>
> "8. A substantial benefit would be gained by handicapped persons by providing elevator access to the mezzanine level of the Mall.
>
> "9. Construction of an elevator to the mezzanine level will bring the Mall into compliance with the Board's

[5] "Public building," as defined by § 13A, includes "privately financed buildings that are open to and used by the public."

Regulations, will not be impracticable, and will not produce an inequitable result.

"10. Installation of a wheelchair lift in lieu of an elevator would not provide comparable access, reliability of operation, or independent use to all segments of the handicapped community, and would not be a satisfactory alternative to installation of an elevator, as required by said Section 14.1."

The Architectural Barriers Board's enabling statute, G. L. c. 22, § 13A, provides that the board "shall make and from time to time alter, amend, and repeal . . . rules and regulations designed to make public buildings accessible to, functional for, and safe for use by physically handicapped persons." The statute also provides that there shall be "no construction, reconstruction, alteration or remodeling of a public building except in conformity with [the] rules and regulations [promulgated by the board]."

In 1977, the board published rules pursuant to the legislative mandate. Rule 14.1 provides: "Buildings under the jurisdiction of these Regulations having two (2) levels shall provide ramp or elevator to each level." Thus, the mall, constructed one year after the regulations were promulgated, was, from its inception, in violation of G. L. c. 22, § 13A. The 1977 rules also provided for variances, if the board determined "that compliance with the[ ] Rules and Regulations [was] impracticable . . . ." 1977 Rules and Regulations § 3.1. The term "impracticable" was not defined in the board's 1977 regulations, but the board's 1982 regulations define "impracticability" as where: "(a) Compliance with the Regulations would be technologically unfeasible, or (b) compliance with the Regulations would result in excessive and unreasonable costs without any substantial benefit to physically handicapped persons." 521 Code Mass. Regs. § 5.11 (1982). This definition was incorporated by amendment into the board's enabling statute, G. L. c. 22, § 13A, as amended by St. 1986, c. 267.[6]

---

[6] The parties agree that the 1982 definition of the term "impracticability" formalized the intent of the 1977 regulations.

Pyramid contends that, looking at the record as a whole, there is no substantial evidence that the construction of an elevator to the mezzanine level will benefit substantially the handicapped. According to Pyramid, handicapped individuals will not use the skating rink or exercise classes, and observation of the skating rink from the mezzanine level is not feasible. Thus, it is impracticable to build an elevator.

Judicial review of an agency's final decision in an adjudicatory proceeding is governed by G. L. c. 30A, § 14 (7) (1986 ed.), which provides in pertinent part: "The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is . . . (e) Unsupported by substantial evidence; or . . . (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."

" 'Substantial evidence' is such evidence 'as a reasonable mind might accept as adequate to support a conclusion.' G. L. c. 30A, § 1 (6) (1986 ed.). *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 466 (1981). Under the substantial evidence test, a reviewing court is not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the division." *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n,* 401 Mass. 357, 369 (1987). See *Winn* v. *Architectural Access Bd.,* 25 Mass. App. Ct. 41, 43-44 (1987) (board has bound itself to comport with requirements of c. 30A).

The board's determination that a substantial benefit would be gained by handicapped persons by providing elevator access to the mezzanine level is supported by substantial evidence. Witnesses testified to a desire to attend exercise classes, private parties, and special community functions (e.g., Muscular Dystrophy skatathon) that are held on the mezzanine level and to supervise children who were using the skating rink. Furthermore, the Hadley Mall is the largest facility of its kind in the

area and is important both as a recreational and commercial center to the community. Although Pyramid presented contradictory evidence, the board found the complainants' evidence to be credible and persuasive. We do not make a de novo evaluation of the credibility of the evidence. *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Comm'n, supra.*

Pyramid argues, however, that the board, in determining what is practicable, failed to engage in a cost-benefit analysis. A cost-benefit analysis is not relevant if, as in this case, the board determines that there would be substantial benefit. Only if there is no substantial benefit does the issue of the cost of complying with the regulation become important.

Finally, Pyramid argues that the board's refusal to permit a wheelchair lift in place of an elevator is arbitrary and capricious. The board heard testimony regarding the safety and reliability of wheelchair lifts. Witnesses testified that the lifts are not subject to independent use by handicapped individuals and cannot accommodate handicapped persons who are not in wheelchairs. The determination by the board that an elevator, and not a lift, is required is within the scope of its broad discretion. See *Brooks* v. *Architectual Barriers Bd.,* 14 Mass. App. Ct. 584, 588-589 (1982). The board's decision was neither arbitrary nor capricious.

*Judgment affirmed.*