HOME-LIKE APARTMENTS, INC. *vs.* ARCHITECTURAL
ACCESS BOARD[1] & another.[2]

No. 88-P-510.

Hampden.    February 10, 1989. — October 25, 1989.

Present: ARMSTRONG, PERRETTA, & SMITH, JJ.

*Architectural Access Board. Handicapped Persons. Administrative Law,*
Hearing, Decision. *Estoppel. Practice, Civil,* Summary judgment.

In the case of a 127-unit residential apartment complex, the construction of
    which did not comply with the requirement of G. L. c. 22, § 13A, as
    then in effect, that five per cent of the units be accessible to physically
    handicapped persons, a decision of the Architectural Access Board de-
    nying the owner's application for a variance adequately explained the
    unacceptability of two alternative proposals offered by the owner and,
    in the circumstances, the board was not required to make a cost-benefit
    analysis before directing the owner to accomplish certain reconstruction
    work on the complex. [854-856]
In the circumstances, the Architectural Access Board acted properly within
    the limits of the law and its discretion in requiring reconstruction work
    on a certain residential apartment complex, the construction of which
    did not comply with the requirement of G. L. c. 22, § 13A, as then in
    effect, that five per cent of the units be accessible to physically handi-
    capped persons. [856-858]
In an action for judicial review of a decision of the Architectural Access
    Board, the judge properly ordered summary judgment upholding the
    board's decision. [858-860]

CIVIL ACTION commenced in the Superior Court Department
on August 19, 1986.

The case was heard by *Charles R. Alberti,* J., on motions
for summary judgment.

*Wendy Sibbison (Bernard Glazier* with her) for the plaintiff.

[1] When this action was brought the agency was called the Architectural
Barriers Board. The name was changed to the Architectural Access Board
by St. 1986, c. 642, § 2.

[2] The town of West Springfield.

*Jamin Ben Raskin,* Assistant Attorney General, for Architectural Access Board.

*Donna L. Wexler (James T. Donahue,* Town Counsel, with her) for town of West Springfield.

PERRETTA, J. When construction of its seven-building apartment complex, known as Patriot Village, was substantially completed, Home-Like sought certificates of occupancy for the 127 units. The town refused to issue the certificates until Home-Like either brought its buildings into compliance with regulations promulgated by the Architectural Access Board (board) or obtained a variance from the board, all as required by G. L. c. 22, § 13A, as amended through St. 1981, c. 346, § 1. At a hearing before the board on an application for a variance, Home-Like explained that its total noncompliance with § 13A was based upon a lack of knowledge which it attributed, in part, to the town's building inspector. Home-Like faulted the town for issuing the building permit and allowing Home-Like to proceed with construction in accordance with plans and specifications from which its complete non-compliance with the statute and regulations was obvious.[3] The board denied Home-Like's application for a variance as to six of the seven buildings in the complex. Home-Like then brought this complaint for judicial review as provided for in § 13A. On the defendants' motions for summary judgment, the judge concluded that it was Home-Like's obligation to know of and comply with applicable building laws and that the board's decision was supported by substantial evidence. On appeal from the judgment that ensued, Home-Like argues that the board's decision is inadequate, arbitrary and capricious, and tainted with errors of law. We affirm.

---

[3] Section 13A read, in pertinent part: "The provisions of this section and all rules and regulations made hereunder, shall be enforced by the [building inspector] . . . ." Although Home-Like named the town as a defendant in its complaint, it seeks no relief other than from the board's decision. We presume that the town was named a defendant because of Home-Like's belief that the building inspector is partially responsible for the problem.

I. *The Building Requirements of G. L. c. 22, § 13A.*

When Home-Like applied for and received its building permit in July, 1984, it was required by § 13A to make "[f]ive per cent of the units . . . accessible, functional and safe units for physically handicapped persons." Although the statute as then in effect did not define the word "accessible,"[4] a definition was framed by the board in its rules and regulations, specifically, 521 Code Mass. Regs. § 5.2 (1982), which defines "accessible" to mean "[s]afely approached, entered and/or used by physically handicapped persons."[5]

In applying this "five percent" mandate to a complex such as Patriot Village, the board required, through 521 Code Mass. Regs. § 8.2 (1982), that "all of the units in the entire complex or project shall be added together." The board concluded that six of the 127 units at Patriot Village should have been made accessible units for handicapped persons.[6]

II. *The Board's Decision.*

There is no dispute that in constructing Patriot Village, Home-Like failed to comply in all respects with § 13A and the board's rules and regulations. In its application to the board for a variance, filed on June 12, 1986, Home-Like represented that compliance would require total reconstruction of entrances, hallways, doorways, staircases, kitchens, bathrooms, and bedrooms as well as construction of ramps or elevators.[7] It esti-

---

[4] See now § 13A, as appearing in St. 1986, c. 642, § 2.

[5] Home-Like agrees that all the board's regulations cited throughout this opinion were in effect as of April 1, 1982.

[6] This "five percent" requirement is also embodied in the board's regulations. Section 8.1 read in full: "In apartment buildings, lodging and residential facilities for rent, hire or lease, *containing twenty (20) or more units,* at least five percent (5%) of the units and the public areas shall be made accessible" (emphasis original). As defined in § 8.4, public areas in those apartment buildings "are the general public function areas, recreation areas, health facilities, pools, meeting areas, community facilities, restaurants, public toilet rooms, laundry areas, trash areas, storage areas and mailboxes, walks, elevators, primary entrances as well·as the stairs and corridors leading to accessible units."

[7] The major problem for Home-Like with reconstruction is the fact that not one apartment at Patriot Village is at grade level. Each of the buildings is two and one-half stories. Upon entering a building, one must walk either up or down at least one flight of stairs to reach an apartment unit.

mated that it would cost between $200,000 and $225,000 to build the required accessible units in the existing buildings at Patriot Village.

As alternatives to bringing Patriot Village into compliance with the statute and regulations, Home-Like made two proposals. Its first suggestion was that it would construct an eighth building at grade level, housing six accessible units. The second proposal involved Home-Like's complex known as Puritan Village and situated adjacent to Patriot Village. There are buildings and units at Puritan Village which are at grade level. Home-Like offered, as an alternative to reconstruction work at Patriot Village, to remodel six grade-level units at Puritan Village. This proposal was not only less costly, but, in Home-Like's opinion, it was also more safe for handicapped persons in emergency situations. The grade-level would remove any need for elevators.

By its decision dated July 30, 1986, the board advised Home-Like, as here pertinent, that: (1) six units in full compliance with the board's regulations were to be "reconstructed" at Patriot Village, with no more than two accessible units in a building; (2) the swimming pool and "site access" were to be brought into full compliance with regulations; but (3) the "remaining residential buildings can remain inaccessible."

III. *The Adequacy of the Board's Decision.*

Relying upon *Winn* v. *Architectural Access Bd.*, 25 Mass. App. Ct. 41, 45 (1987) ("What the board is required to do is to articulate its reasons for the denial of the variance"), Home-Like argues that the board's decision is inadequate in that no explanation was given for the rejection of its two proposals nor was a cost-benefit analysis done to determine whether compliance was impracticable.

Our review of the board's decision, read with the transcript of the hearing before the board, leads us to conclude that Home-Like was provided with an adequate explanation for the unacceptability of its first suggestion, an eighth building at Patriot Village. At the hearing, the town opposed this suggestion on two grounds: (1) the handicapped tenants would be "segregated" in one building; and (2) an eighth building would

present zoning problems. In its decision, the board wrote of this proposal: "However, [a] representative of the Town [town counsel] stated that he felt there wasn't enough room on the present site to construct an additional building and further, the Zoning Board would probably not allow additional units." [8]

As for the Puritan Village proposal, the board noted in its decision only that the complex was "across the street from Patriot Village." The transcript of the hearing before the board reveals, however, that this proposal (which was not made in the written application) was so lacking in specifics as to make any explanation unnecessary. Recognizing that Patriot Village had certain amenities that were unavailable at Puritan Village, the board questioned whether this alternative was a viable one. When Home-Like gave assurances that those amenities would be made available to the handicapped tenants of Puritan Village, one board member pointed out that the two complexes did not appear to share a common drive and that Patriot Village was situated on Craig Drive, a public way which is a "fairly main artery."

Even had Home-Like presented a solution to that concern, we do not think that the board was required to address this proposal, which was described at the hearing by Home-Like as follows: "We would, as time permitted, try to move the people out of there that are in there now, to other apartments and as space became available, rehab that parcel to make compliance. They could be a lot prettier . . . much more pleasing and . . . the eventual effect would be most beneficial to the handicapped." Simply put, Home-Like's suggested alternatives were too uncertain (at best) and illusory (at worst) to require any detailed explanation from the board as to their unsuitability.

Confronted with the choice of compliance or forgiveness, the board was not required to make a cost-benefit analysis before deciding that certain reconstruction work had to be done

---

[8] Home-Like was not unaware of potential zoning problems. There was controversy with Patriot Village from the outset. It originally sought permission to build 175 units, but the zoning board would allow only the present number, 127.

at Patriot Village. This is so for the reason, if no other, that the board was not presented with information to compare and analyze. Additionally, "[a] cost-benefit analysis is not relevant if, as in this case, the board determines that there would be substantial benefit [to physically handicapped persons]. Only if there is no substantial benefit does the issue of the cost of complying with the regulation become important." *Pyramid Co.* v. *Architectural Barriers Bd.*, 403 Mass. 126, 131 (1988). See 521 Code Mass. Regs. §§ 4.1.1 & 5.11; G. L. c. 22, § 13A. Although the board made no findings on this issue, Home-Like has never really argued that compliance with the statute would not provide physically handicapped persons a substantial benefit.[9] We think the benefit, accessible housing, so obvious as to make discussion unnecessary. Compare *Winn* v. *Architectural Access Bd.*, 25 Mass. App. Ct. at 44-45; *Pyramid Co.* v. *Architectural Barriers Bd.*, 403 Mass. at 130.

IV. *Review of the Board's Decision.*

Home-Like next argues that the board's decision is tainted by error of law and is arbitrary and capricious. Home-Like construes the board's decision as constituting a finding of "self-created hardship," which precluded the granting of a variance. This application of the zoning principle of "self-created hardship," see, e.g., *Warren* v. *Zoning Bd. of Appeals of Amherst*, 383 Mass. 1, 11 (1981), is an error of law, Home-Like argues, which requires reversal of the decision.

In advancing this argument, Home-Like relies upon *Winn* v. *Architectural Access Bd.*, 25 Mass. App. Ct. at 45. That case involved construction of a restaurant with a multi-level floor in accordance with plans which the builder believed had been approved by the board. In fact, the board had approved plans which had been submitted by mistake and which showed that the restaurant floor was one level. After construction was completed and the builder's noncompliance with the board's regulations was brought to his attention, he sought a variance. The only reason given by the board for denying the application

---

[9] Home-Like's argument as to substantial benefit relates to the board's failure to determine whether there was a substantial benefit to reconstructing Patriot Village as compared to accepting either of Home-Like's proposals.

was simply that the plans that had been approved did not show that the floor was to be more than one level. In concluding that the board's decision was inadequate, the court stated: "As matter of policy, the board could determine that a hardship created by a failure to submit accurate plans requires more to persuade the board of the need for a variance, cf. *DiGiovanni v. Board of Appeals of Rockport*, 19 Mass. App. Ct. 339, 348-349 (1985), than does a request for a deviation preceding construction. Title 521 Code Mass. Regs. § 5.11 (1982), however . . . at least in a situation where the violation is due to an honest mistake, indicates that other factors are also to be weighed."

As previously discussed, the board's decision in the present case provided Home-Like with an adequate explanation for its ruling. When Home-Like submitted its plans to the building inspector in 1984, it should have been apparent to him that not one of the seven buildings at Patriot Village met any of the requirements of the statute or the board's regulations. For all that appears, the plans and the building permit were based upon a lack of knowledge of the law rather than a "mistake" or "good faith belief," in the *Winn* sense. Further, as pointed out by the board at the hearing when this issue was fully discussed, the "architect should have known the rules."

Home-Like cannot rely upon a claimed erroneous application of the "self-created hardship" rule for two reasons. Even assuming that a "mistake" would not have happened but for the building inspector's erroneous issuance of the building permit, the board was not required to forgive compliance by Home-Like, especially in respect to the statutory mandate, with the five percent rule. As recently stated in *Cellarmaster Wines, Inc.* v. *Alcoholic Beverages Control Commn., ante* 25, 29 (1989): "Moreover, especially where, as here, a legislatively declared important public interest is involved, estoppel is not applied against the enforcement of a statute. See *New York City Hotel Co.* v. *Alcoholic Beverages Control Commn.*, 347 Mass. 539, 542 (1964); *LaBarge* v. *Chief Administrative Justice of the Trial Court*, 402 Mass. 462, 468 (1988); *Gamache* v. *Mayor of North Adams*, 17 Mass. App. Ct. 291, 294 (1983).

Cf. *Johnson* v. *Martignetti*, 374 Mass. [784, 790 (1978)]." Nor does *Winn* v. *Architectural Access Bd.*, 25 Mass. App. Ct. at 45, require anything other than an explanation for the decision which may, but need not, be motivated in part by forgiveness of an honest mistake: "By ordering a remand to the board for findings in accordance with c. 30A, § 11(8), we do not imply that the decision must be changed . . .."

Secondly, although the board would not grant Home-Like a variance from the five percent requirement, the board did not go so far as it might have gone. At least one and as many as four of the seven buildings at Patriot Village can remain inaccessible to handicapped persons under the board's order. See *Brooks* v. *Architectural Barriers Bd.*, 14 Mass. App. Ct. 584, 588-589 (1982).

A review of the transcript of the hearing before the board and its decision, in light of § 13A and pertinent regulations, shows that: (1) the five percent rule set out in the statute had been in effect for ten years when Home-Like commenced building Patriot Village; (2) Home-Like's suggested alternatives to compliance with the applicable law were tenuous and contingent upon the possible actions of those whose interests are different from those of the board; (3) compliance to the extent required by the board will provide an obvious substantial benefit to handicapped persons; and (4) full compliance was not required by the board. These circumstances lead us to conclude that the board acted within the limits of the law and its discretion.

V. *Summary Judgment.*

In allowing the defendants' motions for summary judgment, the Superior Court judge concluded that the board's decision was supported by substantial evidence. He made no mention, however, of two alleged procedural errors in the proceedings before the board. Home-Like argues that the judge's failure to consider these claims requires reversal of the judgment. "Reviewing the order of summary judgment now before us, we will uphold it if 'certain factors converge to convince us that the trial judge was ruling in this case on undisputed facts and, of course, that his ruling was correct as matter of law.' "

*Federal Deposit Ins. Corp.* v. *Csongor*, 391 Mass. 737, 740 (1984), quoting from *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 556 (1976).

There is a handwritten notation across Home-Like's application for a building permit which reads: "Note. Seven (7) apartments to be accessible to and available for handicapped persons." At the hearing before the board, the question arose whether that notation had been made before or after Home-Like submitted the application. By letter dated August 4, 1986, the town advised the board that the notation had been written on the application after its submission by a "part-time assistant in the Building Inspector's office." The board's decision is dated July 30, 1986. Home-Like argues that it was prejudiced before the board and that the board's decision was influenced by an erroneous belief that Home-Like had constructed Patriot Village with full knowledge of its non-compliance.

This argument fails for want of materiality. In the first instance, it does not appear from the transcript of the hearing before the board that the notation played any role in the decision. Indeed, one board member considered the fact that the handwritten notation could have been made on the typewritten application after it had been submitted. Moreover, any inference that the board might have drawn from the notation could have been no worse than what Home-Like readily acknowledged at the hearing, that is, irrespective of the building inspector, Home-Like should have known the building requirements.[10] Cf. *Stadium Manor, Inc.* v. *Division of Administrative Law Appeals*, 23 Mass. App. Ct. 958, 962-963 (1987). Finally, for reasons previously discussed, even assuming that the board had inferred the worst, its decision shows no prejudice to Home-Like, which was not required to bring Patriot Village into full compliance.

There is no support in the record for the claim that the board held an illegal, mid-hearing executive session during which it

---

[10] When a board member stated: "You should have had a proper architect . . . let's not get to the building inspector. The architect should have known the rules," Home-Like's counsel replied, "You are 100% right and I don't disagree."

decided the merits of Home-Like's application. Although the board did convene privately and briefly, it did so with Home-Like's consent ("Sure") and for purposes of establishing the order in which the case was to proceed, that is, Home-Like first, followed by the town, with rebuttal, if any, from Home-Like.

*Judgment affirmed.*