Volterra, J.
This matter is before the court on consolidated actions of the parties both of which seek injunctive and declaratory relief. The plaintiff has asked the court for a declaration pursuant to G.L.c. 231A to make binding the State Building Code Appeals Board’s decision of July 16, 1993 (DN 93-076), on the Town of Ashland, on the Inspector of Buildings for the Town of Ashland, and on the Chief of the Fire Department for the Town of Ashland, if the provisions of the State Building Code are otherwise satisfied. The defendants seek a preliminary injunction to prevent the alleged continuing violation of G.L.c. 148, §261, a contention which I find is not supported by the findings of the State Building Code Appeals Board’s decision of July 16, 1993.
The plaintiff seeks injunctive and declaratory relief for the defendant’s alleged failure to issue Certificates of Occupancy for recently completed cluster housing consisting of four units of attached single-family dwellings each, which cluster housing complies with the requirements of the State Building Code as determined by the State Building Code Appeals Board.
The defendant in its counterclaim alleges that a preliminary injunction must be granted due to the reasonable likelihood of its success in proving that it is not bound by the decision of the State Building Appeals Board. The defendants seek a preliminary injunction to prevent the alleged continuing violation of G.L.c. 148. §261.
For the reasons discussed below, plaintiffs request for an order to make the State Building Code Appeals Board’s decision binding on the defendants is granted, and the counterclaim dismissed.
FINDINGS
The plaintiff, Fafard Real Estate and Development Corporation (“Fafard”),[2] is a real estate development corporation based in the Town of Ashland (“Ashland” or the ‘Town”).
Ashland issued to Fafard Special Permit No. 85-14 (the “Special Permit”) on August 13. 1985, for the construction of five hundred and seventy-six single-family attached homes in a subdivision known as Workmen’s Circle.
The so-called “four-plex” housing configuration of the attached single-family dwellings are comprised of four units each. These single-family homes abut the other units in the “four-plex” on two appropriately rated fire walls. The fire walls extend from an independent basement foundation for each unit up to the underside of the roof. Each unit has two separate and independent means of egress, and an integrated smoke alarm system. None of the “four-plex" units have the characteristics associated with multifamily construction: common hallways, common stairways, and shared internal spaces. 780 C.M.R. §309 identifies various types of residential building or structures termed “Use Group R” which includes the Fafard single-family “four-plex” configuration in Use Group R-3, multiple single-family dwelling units. Although attached the Building Code treats the individual units of the Fafard “four-plex” design as single-family residences with the associated code requirements, as opposed to the more stringent requirements of a four-unit multi-family dwelling, due to the conformity of the “four-plex” design to the R-3 definition.
The controversy between the parties arises out of the adoption by the Town on May 23, 1990 of G.L.c. 148, as then amended. General Laws c. 148, §261 requires the installation of automatic sprinkler systems in multi-unit residential structures of four or more units. Fafard was notified by Ashland’s Inspector of Buildings (“Inspector”) in or about February of 1992 that the occupancy permits for units completed, and building permits for future units would be delayed due to the project’s non-conformity with the recently adopted provisions of G.L.c. 148, §261. In April of 1992 Fafard decided to install automatic sprinkler systems in the units then at issue to avoid delay and to meet its construction completion schedule to committed purchasers of the units. Fafard reserved in writing its right to contest the applicability of §261 as it related to future permits for “four-plex” units being constructed pursuant to the Special Permit.
On April 1, 1993, Fafard requested that the Inspector amend Building Permit No. 7516 with respect to Unit No. 108 in the Workmen’s Circle subdivision, so that the permit would not include any reference to §26I’s automatic sprinkler system requirement. This request was made by Fafard based on the assertion that Unit No. 108, a unit typical of those making up the subdivision, was categorized as a multiple single- *286 family dwelling as defined in the building code and thus not controlled by the requirements of §261.
While the Inspector agreed with Fafard that the buildings were properly classified as R-3 his view was that as §261 did not make reference to use group classifications the statute was thus applicable to the “four-plex” configuration. The Inspector informed Fafard of his right to appeal the decision respecting classification of the “four-plex” units and pursuant to 780 C.M.R. §126.0 such an appeal was made to the State Building Code Appeals Board in a timely manner.
A hearing on the Inspector’s decision was held by the State Building Code Appeals Board of the State Board of Building Regulations and Standards (the “Appeals Board”) on June 24, 1993, at which time the Appeals Board sustained Fafard’s appeal. On July 16, 1993 the Appeals Board rendered a written decision, holding that Fafard’s “four-plex” homes were multiple single-family dwellings of the type R-3, and they were not subject to the provisions of §261. The Appeals Board advised all parties that an appeal of its decision could be taken pursuant to G.L.c. 30A, §14. No appeal of the July 16, 1993 decision was taken.
On July 7, 1993 the Inspector wrote to Fafard, advising that Building PermitNos. 7516 and 7423 had been amended in accordance with the Appeals Board June 24, 1993 decision so as not to require automatic sprinkler systems, and that future building permit applications for the same multiple single-family dwelling configuration would not require the installation of automatic sprinkler systems.
On or about July 14, 1993, defendant Frank Karayianes, the Chief of the Fire Department for the Town of Ashland (“Fire Chief’), declined to process Fafard’s application for smoke alarm permits as required for R-3 dwellings under the Building Code. The Fire Chief made the refusal to inspect the smoke alarm installations on the basis of his assertion that an automatic sprinkler system was required. The Fire Chief was at this time aware of the decision of the Appeals Board. Based on the refusal of the Fire Chief to inspect the smoke detectors the Inspector declined to issue the Occupancy Permits for the units without an automatic sprinkler system. The decision to decline the Occupancy Permits was made in clear opposition to the intent of the Appeals Board.
As a result of the Inspector’s refusal to issue Occupancy Permits for Fafard’s “four-plex” units, Fafard filed a Verified Complaint for Declaratory and Injunc-tive Relief and Damages on October 8, 1993. Later on the same day the Fire Chief filed a Verified Complaint and Request for Injunctive Relief against Fafard. On October 12, 1993, this court allowed a motion to consolidate the two complaints.
On October 12, 1993, Fafard received a letter from the Appeals Board, dated October 7, 1993, which informed Fafard that it had declined to reconsider its July 16. 1993 decision. On the same day the Inspector informed Fafard that occupancy permits would not be issued.
CONCLUSIONS OF LAW I. Authority of the Appeals Board to Decide the Applicability of G.L.c. 148, §261 to the “Four-plex” Design
Chapter 143 Section 93 of the Massachusetts General Laws establishes the State Board of Building Regulations and Standards (the “State Board”) and the Appeals Board, G.L.c. 143, §93. Massachusetts General Laws chapter 143, §94 provides in relevant part that the state board shall have the power to “formulate, propose, adopt and amend rules and regulations relating to, among other things, the classification and definition of any building or structure and use or occupancy of all buildings and structures ... or classes of buildings and structures.” G.L.c. 143, §94. The same statute also provides that the State Board’s rules, regulations, interpretations, and classifications of buildings “shall comprise and be collectively known as the state building code." Id.
Section 95 of Chapter 143 requires the State Board to create “(u)niform standards and requirements for construction and construction materials, compatible with accepted standards of engineering and fire prevention practices, energy conservation and public safety.” G.L.c. 143, §95 (emphasis added). Clearly the State Board was legislatively mandated to harmonize competing standards and assure uniformity in the area of construction and particularly new construction as it applied to fire prevention practices and public safety, as well as to classify buildings.
The eleven (11) members of the State Board are appointed in accordance with G.L.c. 143, §93. Two (2) of the eleven specified construction industry professionals, engineers or officials who comprise the State Board are the State Fire Marshall or his designee, and the head of a local fire department. These two positions support the interests of fire protection professionals as the Board fills its appointed role in maintaining uniform standards applicable to all communities.
The State Board also serves as the Appeals Board pursuant to G.L.c. 143, §100 of the Massachusetts General Laws and is empowered, among other things, to serve in hearing panels of three (3) on appeals from any “interpretation, order, requirement, direction or failure to act by any state or local agency or any person or state or local agency charged with the administration or enforcement of the state building code or any of its rules or regulations.” G.L.c. 143, §100.
II. Nonapplicabilify of G.L.c. 148, §261 to the “four-plex” design
“Automatic Sprinkler Systems; New or Rehabilitated Multi-Unit Residential Structures,” G.L.c. 148, §261, provided in pertinent part:
In a city, town or district which accepts the provisions of this section, any building hereafter con *287 structed or substantially rehabilitated so as to constitute the equivalent of new construction and occupied in whole or in part for residential purposes and containing not less than four dwelling units, including, but not limited to, lodging houses, boarding houses, fraternity houses, dormitories, apartments, townhouses, condominiums, hotels, motels and group residences, shall be equipped with an approved system of automatic sprinklers in accordance with the provisions of the state building code.
In defining the scope of its intended subjects, the Legislature did not describe buildings with the same degree of precision used in the Building Code. The plain language of the passage does not describe what is meant by a “multi-unit residential structure,” which is the language used in its title. Further ambiguity exists due to the inclusion of the term “condominium” which is a form of ownership, not a building type.
In June 1992, the State Board amended the Building Code to reflect the changes made by Section 261. Specifically, it interpreted Chapter 148, §26 to apply to and include only R-l and R-2 Use Group Classifications. The amendments to the Building Code made to accommodate §26I’s effect specifically exclude buildings in the R-3 category because they are considered to be single-family residences. Use Group R-3 structures includes “all buildings arranged for the use of one or two-family dwelling units, including not more than three (3) lodgers or boarders per dwelling unit, and as provided in Section 910.3 for multiple single-family dwelling units.” 780 C.M.R. §309.4.[3]
The plain language of the statute makes its implementation effective on certain classes of buildings “in accordance with the provisions of the state building code.” G.L.c. 148, §261. The Appeal Board found that the design configuration of the “four-plex” units were consistent with the definition of an R-3 classification, a building classification unaffected by §261. The Appeal Board’s determination that the “four-plex” design is of construction type R-3 does not appear to have been arbitrary or capricious, and it is the type of decision delegated to the Appeals Board as part of its duty to harmonize conflicts between competing elements of the statutory enactments, therefor the Appeals Board’s decision settles the question.
III. The Appeals Board’s July 16, 1993 Decision is Final and Binding Upon the Parties
The Appeals Board is authorized by the Legislature to hear appeals directly from parties “aggrieved by an interpretation, order, requirement, direction or failure to act by any state or local agency or any person or state or local agency charged with the administration or enforcement of the state building code or any of its rules or regulations.” G.L.c. 143, §100.
On May 6, 1993, Fafard appealed the refusal by the Inspector to amend the building permit for Unit No. 108 to remove any express or implied reference to §26I’s requirement of an automatic sprinkler system. On June 24, 1993, the Appeals Board conducted a hearing on the matter and sustained Fafard’s appeal. On July 16, 1993, the Appeals Board issued a final written decision sustaining Fafard’s appeal. The Appeals Board determined that Fafard’s emits were properly classified by the Inspector as Use Group R-3 (multiple single-family dwellings), and that §261 did not apply to Use Group R-3. The conclusion of the Appeals Board was that Fafard’s units were not required to be sprinklered.
The defendants failed to either file a Motion for Reconsideration with the Appeals Board within ten (10) days from the date the copy of the decision was mailed to them, per the requirements of 801 C.M.R. §1.01(10)(p), or to file an appeal of the Appeals Board’s decision with the Superior Court within thirty (30) days of receipt of the decision, per G.L.c. 30A, §14(1). The defendants’ failure to make a timely appeal of the Appeals Board’s decision to the Superior Court makes the Appeals Board’s decision sustaining Fafard’s appeal final and binding on the parties.
IV. The Decision of the Board of Appeals is Binding on the Fire Chief
In the hierarchy of the municipal authority of the Town of Ashland the Building Inspector is responsible to determine the proper classification of proposed structures, not the Fire Chief. The “Board of Fire Prevention Regulations Massachusetts Fire Safety Code” addresses the application of the building code under the authority of the Fire Prevention Regulations as follows, 507 C.M.R. §1.02(3):
Application of Building Code: The planning, design and construction of new buildings and structures to provide egress facilities, fire protection, and built-in fire protection equipment shall be in accordance with 780 C.M.R. (the State Building Code) listed in 527 C.M.R. 12.00 Appendix A.; and any alterations, additions or changes in buildings required by the provisions of 527 C.M.R. which are within the scope of 780 C.M.R. (the State Building Code) listed in 527 C.M.R. 12.00 Appendix A shall be made in accordance therewith.
Both the Inspector and the Appeals Board have determined that the proper classification of the Fafard “four-plex” units is that of Use Group R-3. With regard to the Fafard “four-plex” units it is the role of the Fire Chief to enforce those provisions of the relevant codes which affect the design and construction of such Use Group R-3 structures, which classification by final determination of the Appeals Board does not require an automatic sprinkler system.
The Fire Chief failed to file a timely appeal of the Appeals Board’s decision, therefore the Superior Court is without jurisdiction to review the matter. Where an appeal of an administrative agency decision- fails to comply with a thirty (30) day filing requirement, dis *288 missal of the action is proper. Board of Appeals of Rockport v. DeCarolis, 32 Mass.App.Ct. 348 (1992). “In the absence of special circumstances, however, declaratory relief cannot be used to circumvent a period prescribed by statute for obtaining judicial review,” supra. Failure to file a timely appeal removes jurisdiction, Flynn v. Contributory Retirement Appeal Board, 17 Mass.App.Ct. 668, 669 (1984).
Under G.L.c. 30A, §14(7), this court may affirm, remand, set aside or modify the respondent’s decision if it is determined that the rulings, among other things, are unsupported by substantial evidence, based upon an erroneous interpretation of the law, or were arbitrary or capricious. G.L.c. 30A, §14(7); Pyramid Co. of Hadley v. Architectural Access Bd., 403 Mass. 126, 130 (1988); Winn v. Architectural Access Bd., 25 Mass.App.Ct. 41, 42 (1987). “Substantial evidence” is that evidence which a reasonable mind might accept as adequate to support a conclusion. Vaspourakon Ltd. v. Alcoholic Beverage Control Comm’n, 401 Mass. 347, 351 (1987). The court defers to the respondent’s factfinding role and its knowledge and expertise. See School Comm'n of Brookline v. Bureau of Special Education Appeals, 389 Mass. 705, 716 (1983). Accordingly, this court may not make a de novo determination of the facts, make different credibility choices, or draw different inferences from the facts found by the Appeals Board.
In addition the Superior Court lacks subject matter jurisdiction as the determination of questions such as this were delegated to the Appeals Board. Mass.R.Civ.P. 12(h)(3). “Whenever it appears by suggestion of a party or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the matter.” The court must decide the jurisdictional question whenever raised and however raised, even sua sponte. Flynn v. Contributory Retirement Appeal Board, 17 Mass.App.Ct. 668, 670 (1984).
“Where a final decision has been reached by the appropriate duly authorized administrative agency, where no error is manifest, and where the appeal period has run there is no basis for this court to review the final decision of an administrative agency.” “Sloppiness in following a prescribed procedure for appeal is not encouraged or condoned, but at the same time a distinction is taken between serious missteps and relatively innocuous ones. Some errors and omission are seen on the face to be so repugnant to the procedural scheme, so destructive of its purposes, as to call for dismissal of the appeal. A prime example is attempted institution of an appeal seeking judicial review of an administrative decision after expiration of the period limited by a statute or rule.” Schulte v. Director of the Division of Employment. 369 Mass. 74, 79 (1975).
Accordingly, I declare pursuant to the Declaratory Judgments Act, G.L.c. 231A that the application for a preliminary injunction by the Chief of the Fire Department of the Town of Ashland must be denied as the Superior Court is without jurisdiction to review the State Building Code Appeals Board’s decision of July 16, 1993 (DN 93-076) due to the failure of the defendant to file a timely appeal.
I also declare that the decision of the State Building Code Appeals Board ruling that G.L.c. 148, §261 did not apply to the “four-plex” design utilized by plaintiff was within the lawful authority of the Board, and that the decision of the Board is final and binding upon the parties.
For the reasons outlined above, the plaintiffs application for an order to make the Appeals Board’s decision binding on the defendants is ALLOWED.
ORDER
That the Chief of the Fire Department of the Town of Ashland is ordered to make immediate inspections of those “four-plex" units of the Workmen’s Circle development in Ashland as designated by Fafard; such inspections are restricted to the class of concerns appropriate for Use Group R-3; and, if the appropriate concerns of the Fire Chief are adequately addressed then the Fire Chief shall provide the Building Inspector with such certifications as are required by the Town of Ashland from the Fire Department for the granting of a Certificate of Occupancy. Future inspections of the Use Group R-3 units comprising the Workmen’s Circle development by the Fire Chief, or his successors, shall conform to this order.
I also declare that the decision of the State Building Code Appeals Board as to the non-applicability of G.L.c. 148, §261 to the “four-plex” design was within its authority, and binding upon the parties.
That the Building Inspector of the Town of Ashland shall expedite the issuance of Certificates of Occupancy for those emits of the Workmen’s Circle development which are completed at the time of this decision if the requirements of the State Building Code are otherwise met.
Pursuant to Mass.R.Civ.P. 54(b), there being no just reason for delay and based upon the financial exigencies set forth in Fafard’s supporting papers, separate, final judgment shall enter in favor of Fafard on Count I of its Verified Complaint for Injunctive and Declaratory Relief in Civil Action No. 93-5878.

 Fafard is the successor-in-interest to Ledgemere Condominium Corporation pursuant to the terms of Fafard’s Plan of Reorganization under Chapter 11 of the United States Bankruptcy Code, which became effective August 13, 1992.

 Section 910.3 provides:
Multiple single-family dwellings: Single-family dwelling units (Use Group R-3) located above or adjacent to other single-family dwelling units (Use Group R-3) shall be considered as one building classified as Use Group R-3 for the purpose of determining the applicable provisions of this code, provided each dwelling unit is completely sepa *289 rated from the adjacent dwelling unit(s) by fire separation wall(s) and floor/ceiling assemblies of not less than 1-hour fire-resistance rated construction and each unit has independent means of egress.