Fremont-Smith, J.
Before this court are cross motions for judgment on the pleadings. The plaintiff, Massachusetts Bay Transportation Authority (“the MBTA”) brings this action pursuant to G.L.c. 30A, §14 for judicial review of five decisions of the Architectural Access Board (“the Board”) denying the MBTA’s variance requests to install retractable mini high platforms at five new commuter rail stations on the Worcester line. The MBTA sought the variances from the Board’s regulation, 521 CMR §18.6.1, that requires the MBTA to install full high platforms at all newly constructed stations. The plaintiff requests that this court reverse the Board’s decisions, and the defendant requests that this court affirm the Board’s decisions. This court AFFIRMS the decisions of the Board.
BACKGROUND
521 CMR §18.6.1, the Board’s handicap access regulation, stipulates that newly constructed stations shall have full high platforms (which provide disabled people access to ail cars on commuter trains), whereas 521 CMR §18.6.2 provides that reconstructed, altered, or remodeled stations may use mini high platforms (which permit access for disabled people to only two cars of a train). The Board’s governing statute provides that a party may seek a variance from its regulations. It provides:
If the Board determines that compliance with said rules and regulations is not feasible technologically, or would result in excessive and unreasonable costs without any substantial benefit to physically handicapped persons in a particular case, it may provide for modification of, or substitution for, such rule or regulation. In all petitions for variance, the burden of proof shall be on the party requesting a variance to justify its allowance.
G.L.c. 22, §13A.
In 1994, the Legislature allocated $78 million for the MBTA to extend its commuter rail service between Framingham and Worcester, a project which entails the construction of new stations at Ashland, Grafton, Millbury, Southborough, and Westborough. At the *212 time of the administrative hearing, the MBTA had not begun construction of the stations.
On April 12, 1996, the MBTA applied for variances for its new commuter rail stations in Ashland, Westborough, Southborough, Millbury, and Grafton, requesting that the Board permit it to build mini high platforms instead of full high platforms. The MBTA stated in its variance applications that Conrail owns the right of way on the tracks between Framingham and Worcester that the MBTA would use, that Conrail would not consent to the construction of full high platforms on its right of way, and that it was therefore technologically unfeasible to construct full high platforms. The MBTA also pointed out that full high platforms would require a raised platform for the entire length of the five new stations (800 ft), which would also require installation of alternative track layouts involving sidings and signalization at each track to permit Conrail’s freight trains to pass through, at an additional cost of $36,500,000.
The Board held a hearing on July 22, 1996 and denied the variance requests on August 21, 1996 in five separate, but in many aspects, identical decisions. The MBTA appealed the Board’s decision to the Superior Court on September 19, 1997, and also filed a petition for a rehearing with the Board on September 23, 1996, which the Board denied on October 2, 1996. On October 18, 1996, the MBTA filed a second complaint with the Superior Court seeking review of the Board’s denial of the MBTA’s petition for rehearing, which the Court consolidated with the earlier appeal on February 21, 1997.
DISCUSSION
The Court can review and modify a state administrative agency’s decision if it determines that the substantial rights of any party may have been prejudiced because the agency decision was based on a violation of law, unsupported by substantial evidence, or was arbitrary or capricious. G.L.c. 30A, §14(7)(g). The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989).
“In determining whether the commission’s findings are based upon substantial evidence, the court must give due weight to the commission’s expertise and to the discretionary authority conferred upon it by the Legislature." Fioravanti v. State Racing Commission, 6 Mass App.Ct. 299, 303 (1978). Substantial evidence means “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Id. The court’s “ [disbelief of any particular evidence does not constitute substantial evidence to the contrary.” New Boston Garden Corp. v. Board of Assessors of Boston, 383 Mass. 456, 472 (1981).
The MBTA raises several arguments as to why this Court should reverse the Board’s decision. It maintains that 1) the issue of technological unfeasibility is determined by collateral estoppel, 2) construction of full high platforms is in any event technologically unfeasible, 3) the Board does not have statutory authority to regulate train platforms, and 4) the Board’s determination that the disabled would benefit from full high platforms is not supported by substantial evidence.[1]
I. Collateral Estoppel
The MBTA argues that the issue of whether or not it is technologically feasible for the MBTA to build full high platforms was previously decided by the Superior Court in Massachusetts Bay Transportation Authority v. Architectural Access Board, Civ. No. 92-2209 (Suffolk Superior Court January 26, 1994) (“the Chelsea case”). There, the MBTA argued and the Superior Court found that it was technologically unfeasible to construct handicap accessible platforms adjacent to its outbound track at the Chelsea station, where the MBTA owned two of the tracks, Conrail owned the third, and the MBTA’s outbound track lay between Conrail’s track and the MBTA’s inbound track. The MBTA applied for a variance on the ground that it was technologically unfeasible where Conrail owned one of the rails at which the MBTA would need to build the platform and would not consent to the platform’s construction. Id. at 6.
The Board denied the variance request, and the Superior Court (O'Toole, J.) reversed, finding that building the platform was technologically unfeasible because “trying to build a structure where there is not enough physical space to accommodate it” is a “problem that practical engineering [could not] solve.” Id. The Court pointed out “[t]here is no question that the MBTA did not own the physical space needed to build an outbound platform immediately adjacent to the outbound track,” and that the Board, in requiring the MBTA to conform to its regulations, had no authority, in effect, to order the MBTA to acquire properly from unrelated abutting neighbors in order to comply with the regulations. Id. At 7.
Although the MBTA contends that the decision in the Chelsea case should control this appeal and preclude the Board from finding that building the platform is technologically feasible, such collateral estoppel operates only if the issue decided in a prior adjudication is identical to that presented in the later action, if the party against which the doctrine is asserted was a party in the prior adjudication, and if there was a final judgment on the merits. Massachusetts Property Ins. Underwriting Association v. Norrington, 395 Mass. 751, 753 (1985).
Here, the above conditions for issue prelusión are not met. While it is agreed that Conrail owns the tracks and must give permission for the' platforms *213 to be constructed, the MBTA, as is discussed below, has failed to demonstrate by substantial evidence at the agency hearing, that Conrail refuses to permit the necessary construction. As the issue presented here is not factually identical to that decided in the Chelsea case, but is different in an essential respect, issue preclusion does not occur.
II. Technological Unfeasibility
As noted above, the MBTA maintains that, regardless of whether issue preclusion applies, it is technologically unfeasible to construct full high platforms at the five stations on the Worcester line because Conrail owns the right of way and will not permit the MBTA to build full high platforms.
However, apart from the MBTA’s applications for variances and an opening statement by an MBTA representative (which are not evidence), nothing in the record substantiates the MBTA’s assertion that Conrail refuses to accept a four track system so as to accommodate the full high platforms.
At the hearing, Conrad's representative (Thomas Egan) testified that mini platforms would be “preferred,” but he did not testify that Conrail would not accept a four track system. He said:
Conrail has reviewed various proposals by the MBTA for stations along the Framingham to Worcester corridor. It is our position that the proposal advocated here by the MBTA [mini high platforms] and discussed by Mr. James Eng is preferred from a safety and operational standpoint . . . the other proposals considered by the MBTA . . . have also been reviewed by Conrail, and it is our opinion that they raise increased safety and operational concerns that could adversely affect both freight and passenger trains operations in this corridor. RII at 33-34. (Emphasis added.)
James Eng, the MBTA’s engineer, was similarly equivocal. In discussing the Ashland station, he testified:
So, this is the scenario where Conrail will accept a four track to a station, but we’re looking at all the additional work that we have to do to make it a four track type station. We’re talking about the properties that we’re going to have to buy ... in order for us to widen [the right of way] some more for the four tracks. RII at 66.
While Eng earlier asserted that “the four track [system] ... would include a lot of switching before you get back on the main line. I don’t think Conrail can live with that with their dispatching and the efficiency of running commuter service.” (RII at 62.)
His expressed opinion falls short of an unequivocal refusal by Conrail to permit the construction. When, in discussing the Millbury station, a Board member asked Eng: “[the Millbury station] could accommodate the four track scheme without major issues — so, what would be the reason then for not doing that?” (RII at 80.), he responded “the additional costs construction wise here is many,” id., a response which similarly indicates not that Conrail would refuse to accept the four track system, but rather would prefer to avoid the additional costs.
Nor is there any substantial evidence in the record that the four track system would be unfeasible because it would be more dangerous to operate than the mini high platforms sought by the MBTA variances. With the four track system, a commuter train would be diverted to the outside tracks, which would require coordination of the switching to make sure the right train was on the right track. With mini high platforms, however, the MBTA would have to employ extra people to ensure that the mini high platforms were retracted in order to permit a Conrail train to pass. When a Board member asked Eng if one system was more inherently safe than the other, he did not respond. Because the MBTA failed to prove that the four track system was technologically un- ■ feasible, the Board’s finding on this issue cannot be disturbed.[2]
III. The Board’s Statutory Authority to Regulate Access Platforms
General Law c. 22, §13A gives the Board the power to make “rules and regulations designed to make public buildings accessible to, functional for, and safe for use by physically handicapped persons.” It defines “public buildings” as “buildings constructed by the commonwealth . . . with public funds and open to public use . . . including . . . those constructed by . . . the Massachusetts Bay Transportation Authority!.]” G.L.c. 22, §13A also provides that “[b]uildings that are open to and used by the public shall include . . . transportation terminals.”
The MBTA argues that the Board is not regulating access to buildings, but rather, is regulating access to trains, and that because trains are not buildings and the Board is authorized to regulate only buildings, the Board cannot regulate platform access to trains.
This Court concludes, however, that the Board has authority to regulate the access to trains from platforms. A platform is a stationary object that is part of a transportation terminal, rather than a part of a train. Persons exiting the trains will be seeking access to the station buildings, including the platforms. Moreover, it might well defeat the purpose of c. 22, §13A to interpret it so restrictivefy as to permit the Board to regulate access to station buildings but not access to and from trains by way of the platforms. Such an interpretation could result in a situation where the Board could ensure handicapped persons’ access to the terminal, but not to the trains, which are the raison d'etre for a terminal.
*214 IV. Excessive and Unreasonable Costs Without Any Substantial Benefit to Physically Handicapped Persons
As noted above, G.L.c. 22, §13A provides that a variance will be granted if compliance is not technologically feasible or if compliance would result in excessive cost without substantial benefit to the disabled. Once the Board determines, on the basis of substantial evidence, that there would be a substantial benefit to the disabled, however, a cost benefit analysis is not relevant. Pyramid Co. of Hadley v. Architectural Barriers Board, 403 Mass. 126, 131 (1988). “Only if there is no substantial benefit does the issue of the cost of complying with the regulation become important.” Id.
The question, then, is whether the Board’s finding that full high platforms will provide a substantial benefit to the handicapped was based on substantial evidence. The Board found that:
full length platforms, at the newly constructed stations will afford persons with disabilities a substantial benefit, over the life of the platforms, i.e., access to all cars of the train (not to be restricted to two cars); board and get off train at the same location as all other passengers (not to be segregated), and not have to travel a greater distance to reach said platforms, the same as able bodied persons. The Board also expressed concern with the safety of persons boarding a train at Back Bay or South Station and not loading one of the first two trains. If disembarking at a station without a full high platform, a person with a disability is at a great risk of attempting to exit a train without a full platform at the station.
In the Chelsea case, the Court found that the Board’s finding that there would be a substantial benefit from the building of elevated platforms was not supported by substantial evidence. There, the Board had acknowledged at oral argument that its finding “was not based on any specific data in the record, such as ridership surveys, demographic profiles, identified experience at other similar stations, customary rules of thumb, or the like. Rather, the conclusion that there would be a substantial benefit is apparently based on the intuition that ‘If you build it, they will come.’ ” Chelsea, at 9.
Similarly here, at oral argument, the Board did not dispute MBTA counsel’s assertion that, on no known occasion, had more than three handicapped persons sought to board a train, so that there was no evidence that more than two cars of a train have ever been needed to be accessible to accommodate the needs of the handicapped. Nor was any evidence presented in the record that any handicapped persons have ever reasonably considered themselves to be “segregated” because fewer than all of the train cars, or less than the entire length of the platform, has been accessible to them, or any substantial evidence in the record to support the Board’s stated concern that, without full high platforms, a handicapped person would be required to travel a greater distance than an able bodied person to board a train,[3] or might attempt to disembark where there is no handicapped accessible platform.
On the other hand, the statute does place the burden of proof to demonstrate the conditions for a variance, on the applicant, and here, unlike in Chelsea, the MBTA provided virtually no evidence that the mini-high platforms would provide substantially equivalent accessibility to the handicapped.[4]
In short, although the Court finds the evidence upon which the Board based its findings of substantial benefit to the handicapped to be conjectural, intuitive and not based on substantial evidence in the record, neither did the MBTA, which had the burden of proof, provide any substantial evidence to the contrary. Accordingly, the Court does not consider that it is empowered to reverse the findings of the Board in these circumstances.
ORDER
For the above reasons, the court hereby ORDERS that the Board’s decisions are AFFIRMED, and final judgment shall enter for the defendant, Architectural Access Board.

 At the hearing before this Court, the Board also pointed out that in 1990, the MBTA and the Board executed a Memorandum of Understanding (“MOU”) in which the MBTA agreed to comply with the Board’s regulations requiring the MBTA to construct full high platforms at all newly constructed stations throughout its commuter rail system, including stations along the Worcester line. With the exception of the Abington and Weymouth Landing Stations, the MBTA agreed in the MOU not to seek variances from the full high platform requirement at any of its newly proposed stations. The MOU was referred to, but not relied on by the Board in its decisions, and was not entered into evidence during the hearing. The Board now moves to supplement the record and have the Court consider the MOU when deciding the present appeal. As it did not comprise a basis for the Board‘s decision, however, it is not strictly relevant to this appeal, and the Court denies the motion to supplement the record in that regard. The Court thus does not address the question of whether, if a variance were obtained, the MBTA might thereby be in violation of the MOU, or whether there might be other defenses (e.g. impossibility of performance) to enforcement thereof.

 If, at a subsequent time, Conrail flatly refuses its permission for the construction, the reasoning of the Chelsea case would be applicable and a finding of technological unfeasibility would be compelled. Under those circumstances, the MOU might also, as a legal matter, be impossible of performance.

 There was evidence that at Southborough station, handicapped persons are required to travel longer distances because the town, because of historical conservation concerns, refused permission for the MBTA to build an overpass.

 In the Chelsea case, the Court pointed out that the MBTA had provided not insubstantial evidence that it was already providing comparable service to the handicapped by way of bus service, so that “the marginal value of making the station also accessible would be small.” Id. at 10. No such evidence was presented at the agency hearing here.