MICHAEL F. IODICE, trustee,[1] *vs.* ARCHITECTURAL ACCESS
BOARD.

Suffolk. April 2, 1996. - March 7, 1997.

Present: WILKINS, C.J., LYNCH, O'CONNOR, & GREANEY, JJ.

*Architectural Access Board. Building. Administrative Law,* Agency, Regula-
tions, Agency's interpretation of regulation. *Regulation. Handicapped
Persons.*

The Architectural Access Board did not exceed its authority under G. L.
c. 22, § 13A, fifth, seventh & ninth pars., and regulations thereunder, to
review a building inspector's decision with respect to proposed construc-
tion. [372-374]

Substantial evidence supported the determination of the Architectural Ac-
cess Board that the front entrance of a certain building was a "primary
public entrance" within the meaning of 521 Code Mass. Regs, § 26.1
and that the costs to make the entrance accessible to persons in
wheelchairs was not excessive in relation to the benefit yielded. [375-376]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 2, 1990.

The case was heard by *J. Harold Flannery,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Marshall F. Newman* for the plaintiff.

*Rosemary S. Gale,* Assistant Attorney General, for the
Architectural Access Board.

*Jane K. Alper & Matthew Engel,* for the Disability Law
Center, Inc., amicus curiae, submitted a brief.

O'CONNOR, J. By letter dated February 5, 1987, the defen-
dant, then named "Architectural Barriers Board" (board), an
agency within the Commonwealth's Department of Public
Safety, notified the plaintiff that, "[u]pon information received
by the Architectural Barriers Board," the Chatham Center
building located at 29 Crafts Street, Newtonville, "appears to

---

[1] Of the Chatham Investment Trust of Newton.

violate Massachusetts General Laws, Chapter 22, Section 13A, and the Regulations of the Board thereunder." The letter stated that the reported violation involved § 26.1 of the 1982 board regulations (521 Code. Mass. Regs. § 26.1 [1986]) in connection with "[p]rimary public entrance[s]," and that "[u]nder Massachusetts law, the Board is authorized to take legal action against violators of its Regulations; including but not limited to an application for a court order preventing the further use of an offending facility." The letter further stated: "The Board also has authority to grant variances from its Regulations in appropriate circumstances. You are requested either to notify the Board in writing of the steps you have taken to comply with the above regulations or to file a written application for a variance with the Board." In response, counsel for the plaintiff submitted an application for a variance, but informed the board at the same time that "he is not in violation of § 26.1 of the 1982 Regulations because the entrance to the building facing Crafts Street is not a 'primary public entrance.' " On September 8, 1987, after a hearing, the board, now the Architectural Access Board, issued a decision denying the requested variance.[2]

Pursuant to G. L. c. 30A, § 14, the plaintiff sought Superior Court review of the board's decision. In December, 1989, a Superior Court judge remanded the matter to the board for further hearings, following which the board again denied the variance, having concluded that the front entrance of Chatham Center was a primary entrance under the relevant regulation and that the cost for compliance was not excessive when compared to the benefits derived by handicapped persons. The plaintiff filed another complaint for judicial review under § 14, which led to a second Superior Court judge's decision affirming the board's decision.

In his memorandum and order the judge stated that the "[p]laintiff's contentions are two: (1) the decision of the [board] was in excess of its statutory authority; and (2) the [board's] interpretation of 521 [Code Mass. Regs.] § 26.1 was erroneous." The judge rejected those contentions, setting forth his reasoning, with which we agree, in a full and clear discussion. The judge also stated in his memorandum: "The plaintiff also contends that the variance he applied for was improperly denied. Presumably, he raises the issue, although

[2]We acknowledge the amicus brief of Disability Law Center, Inc.

he emphasizes his design-compliance argument, as an alternative or fallback position if the court should find the building not in compliance with the regulation. However, he has not set forth any argument as to the denial of the variance being improper. He does not argue that he meets the statutory requirements for a variance, namely, that there would be no substantial benefit to handicapped individuals if the building were brought into conformity with 521 [Code Mass. Regs. § ] 26.1 or that doing so would be technologically infeasible. M. G. L. c. 22, § 13A. Moreover, there is nothing in the present record to show either infeasibility of compliance or lack of benefit to handicapped users. Therefore, there is no basis for concluding that denial of a variance was error."

In an unpublished memorandum and order, the Appeals Court affirmed the judgment that had been entered in the Superior Court. See 37 Mass. App. Ct. 1106 (1994). We granted the plaintiff's application for further appellate review. We, too, affirm the judgment of the Superior Court.

We summarize the relevant facts. Having reviewed the architectural plans for the plaintiff's building and concluded that its design complied with the applicable regulations, the assistant building commissioner (building inspector) of the city of Newton issued a building permit on March 15, 1985, for the construction of Chatham Center, located at 29 Crafts Street in Newtonville. The front entrance of the plaintiff's building faces Crafts Street, a public way. The words, "Chatham Center," appear in large letters above the front entryway, and the number 29 is marked to the left and right of the doorway. The front entrance of the building is inaccessible to persons in wheelchairs. An entrance at the rear of the building, where a parking lot is located, is accessible to persons in wheelchairs. A sign in front of the building says "HANDICAP ACCESS & PARKING IN REAR OF BUILDING." The rear entrance is approximately 180 feet down a driveway from the public way.[3]

The plaintiff first argues, as he did in the Superior Court,

_____

[3]In connection with its final order, the board found as follows: "[T]he 29 Crafts Street entrance is a primary entrance . . . to the building . . . the building identity is Chatham Center, with large numbers 29 on both sides of the doorway. Further the Board finds that persons do use the front entrance (29 Crafts Street) as evidenced by the video showing persons, arriving by foot or in some cases by vehicle, entering and leaving the building, by that entrance. The Board noted public transportation is provided on

that the board exceeded its authority under its enabling statute, G. L. c. 22, § 13A, in reviewing the Newton building inspector's decision, which was made before Chatham Center was built, that the board's regulations allowed construction of the building with only the rear entrance being accessible to people in wheelchairs. The plaintiff also argues, as he did in the Appeals Court, that the board's power to review a building inspector's decision is limited to those situations where the local inspector imposes requirements on a developer that the developer deems too onerous. Otherwise, the plaintiff says, the board is not authorized to review municipal interpretations of the board's regulations as applied to a construction project.

In examining the extent of the board's powers, we accord deference to the board's own construction thereof and construe such powers so as to facilitate the agency's function as designated by the Legislature. See *Brooks* v. *Architectural Barriers Bd.*, 14 Mass. App. Ct. 584, 588 (1982); see also *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 524-526 (1979). The fourth paragraph of G. L. c. 22, § 13A, states that "[t]he board shall make and from time to time alter, amend, and repeal, in accordance with the provisions of chapter thirty A, rules and regulations designed to make public buildings accessible to, functional for, and safe for use by physically handicapped persons." The seventh paragraph states that "[t]here shall be no construction, reconstruction, alteration or remodeling of a public building except in conformity with said rules and regulations. . . ." Although G. L. c. 143, § 3W, charges local inspectors with the responsibility of reviewing construction plans and specifications before issuing building permits to ensure that proposed structures will conform to regulations, the board is neverthe-

---

the adjacent street, and a person arriving by same would have to travel an additional 180-190 feet down the driveway to the accessible entrance. Also, the Board finds that although the rear entrance is also a primary entrance and may be used by persons working and doing business in the building, it is not the *sole primary entrance* used by the public, and it does not give the appearance of being the only 'primary entrance.' Further, the Board did not find the cost for compliance excessive when compared to the benefits derived by disabled persons in having access to the most visible entrance when approaching the building." (Emphasis in original.) In addition, the board's decision states: "The issue of the cost of compliance by a ramp was discussed [by the board members participating in the decision], with the cost placed at $48,000 to $50,000."

less empowered by the ninth paragraph of G. L. c. 22, § 13A, as follows:

> "The board shall receive complaints of noncompliance with this section or any rule or regulation promulgated hereunder from any person or may receive complaints initiated by its own staff. If the board finds, after notice and opportunity for a hearing, that any person is not in compliance with this section or with any rule or regulation promulgated hereunder, it may issue an order to compel such compliance."

Section 13A, therefore, makes the board the ultimate arbiter of regulatory compliance. Although the fifth paragraph of § 13A provides that "[t]he provisions of this section and all rules and regulations made hereunder shall be enforced by the inspector of buildings, building commissioner, local inspector and inspector," the sixth paragraph provides that

> "[t]he board shall have the power of local and state inspectors in the enforcement of its rules and regulations . . . . The board shall take such other actions as may be necessary and appropriate to encourage and assist all state and local building inspectors to enforce the provisions of this section, all rules and regulations made hereunder and decisions of the board, including but not limited to, providing training and technical assistance to said inspectors."

If a local inspector fails to enforce access regulations and erroneously issues a building permit, the board is authorized to ensure that the building is accessible to the full extent of the regulations. Indeed, the statute confers on the board the power to identify and rectify inspectors' omissions by providing in the tenth paragraph that "[t]he board shall maintain a record of all state and local building inspectors who issued a building permit for a building later found by the board to be in violation of this section or any rule or regulation promulgated thereunder." As the amicus brief emphasizes, this power residing in the board is consistent with the remedial purpose of the enabling legislation and regulations "to make public buildings and facilities accessible to, functional for, and safe for use by persons with disabilities." See 521 Code Mass. Regs. § 26.1.

The plaintiff next contends that the burden of proof before the board as to whether the front entrance of Chatham Center is a "primary public entrance" within the meaning of 521 Code Mass. Regs. § 26.1, rested with the board and that its decision was not supported by substantial evidence. We need not and do not decide which party had the burden of proof. We shall assume that the burden rested with the board because, in any event, there was substantial evidence to support the board's conclusion. Indeed, the plaintiff premises his argument that the board's decision was not based on substantial evidence in large part on his contention that the board was mistaken in thinking that a building can have more than one "primary entrance" for purposes of 521 Code Mass. Regs. § 26.1. The plaintiff's argument is without merit. The regulation provides: "The primary public entrance(s) of a building shall be accessible by persons in wheelchairs." In pluralizing the word "entrance" in the regulations with a parenthetical "s," the board explicitly anticipated the possibility that a building may have more than one primary means of ingress and egress.

The plaintiff further argues that, in determining whether the Crafts Street entrance was a "primary" entrance, it is inappropriate to consider whether the entrance was visible and identifiable to members of the public and used by them. Instead, the plaintiff contends that the correct test is whether an entrance was designed to be primary, and that Chatham Center's rear entrance leading from the parking lot to the elevators and all other spaces in the building, not the front entrance, was so designed. The plaintiff asserts that under any other analysis, every public entrance to a building would be "primary" and thus subject to 521 Code Mass. Regs. § 26.1. We disagree. Nothing in the wording or context of the access regulations supports the plaintiff's emphasis on the architect's or owner's concept or design of the building as dispositive of any entryway's primacy. Rather, as the Superior Court judge concluded in his memorandum, "the [board's] regulations are 'use' rather than 'design' regulations, for the policy behind them demands that buildings be accessible, functional, and safe as used. Otherwise, the legislature's objective would not be met." In reviewing the board's decision, we are required to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the

discretionary authority conferred upon it." G. L. c. 30A, § 14 (7). Giving deference to the board's interpretation of its regulations, we conclude that the board was warranted in finding (1) that the Crafts Street entrance to Chatham Center is a "primary entrance," and (2) that the duty the regulations impose on the plaintiff to make that entrance accessible to persons in wheelchairs does not entail costs which are excessive in relation to the benefit yielded to physically disabled visitors. Surely, reasonable minds could accept the evidence that the conspicuously marked Crafts Street entrance is prominent from the abutting Crafts Street; that Crafts Street, as the plaintiff concedes, is "heavily traveled"; and that a number of visitors were observed using the front entrance during business hours, as adequate to support the conclusion that the front entrance is primary, regardless of the presence of another significant entrance at the rear of the building.

Concerning the board's decision not to grant a variance, the plaintiff offered no evidence and makes no argument on appeal to upset the board's determination that the required modification of the front entrance would be technologically feasible and would not, at an expense the plaintiff estimated at $48,000 to $50,000, create excessive or unreasonable costs in light of the benefit inherent in eliminating an additional 180 feet of travel down the driveway for handicapped persons seeking an accessible entrance. See G. L. c. 22, § 13A, seventh par.

*Judgment affirmed.*