Velis, J.
In this action, the plaintiffs, John Breneman and William D. Breneman (“the Brenemans”), seek judicial review pursuant to G.L.c. 30A, §14 of a decision by the Massachusetts Aeronautics Commission (“MAC”) denying the plaintiffs’ request for a permit to rebuild an eighty-foot hill (“80’ hill”) on their property abutting the end *486 of the runway at Tanner-Hiller Airport (“Tanner-Hiller”). This matter is before the Court on the plaintiffs’ motion for judgment on the pleadings and the defendant’s cross motion for judgment on the pleadings. For the following reasons, the plaintiffs’ motion is DENIED and the defendant’s motion is ALLOWED.

BACKGROUND

Tanner-Hiller, located in New Braintree, Massachusetts, is privately owned by the Estate of Leonard A. Tanner (“Estate”).[1] It is open to the public. It has one runway that is paved. There are no published instrument flight approaches or departures for the runway.
The plaintiffs’ land curves around the northern end of the runway at Tanner-Hiller. The plaintiffs maintain that an 80’ hill naturally occurring on their property was illegally removed some time prior to 1991, so that the runway might be extended. Robert J. Mallard, Manager of Airport Engineering for MAC, measured the runway on November 12, 1993 and found it to be approximately 3,025 feet in length. Previous records had the runway measuring 2810 feet in length. Dick Bunker of MAC measured the runway again in 1999 and found it to be 3,034 feet in length. MAC and the Federal Aviation Authority (“FAA”) never issued any approvals for lengthening the runway. Furthermore, approximately 25,000 to 30,000 cubic yards of solid waste are buried on the plaintiffs’ properly. They must remove the buried waste subject to an Environmental Order issued by the Town of New Braintree, finding the waste a violation of G.L.c. 131, §40. The plaintiffs maintain that Tanner removed the 80’ hill and buried the solid waste on their property. On September 25, 1992, the plaintiffs brought suit against Tanner.[2] Pre-trial motions disposed of all claims between the parties.
On June 14, 2000, the plaintiffs filed Notices of Proposed Construction and Alteration with the FAA. They requested permission to erect a fence on their property approximately 100 feet from the nearest point of the runway and to rebuild the 80’ hill on their property approximately 100 to 200 feet from the nearest point of the runway. On Januaiy 5, 2001, the FAA determined that both the proposed fence and the proposed hill would be a hazard to air navigation. The FAA calculated that the hill would exceed allowable approach surface obstructions by 62 feet.
On September 21, 2000, MAC notified the plaintiffs that a permit was not required to erect the fence, and that a permit might be required to replace the hill. On August 15, 2001, the MAC held a hearing at which plaintiffs made oral argument, offered testimony from expert witnesses, and submitted documents. At the close of the hearing, the Commissioners, in the plaintiffs’ presence, voted unanimously to deny the plaintiffs’ request for a permit to rebuild the hill.
The plaintiffs appealed the FAA’s hazard determination to the D.C. Circuit Court of Appeals. After a hearing and consideration of the record and briefs, the court found on February 26, 2002, the plaintiffs lacked standing to challenge the FAA’s hazard determination regarding the fence but had standing regarding the hill because they submitted an affidavit stating that MAC “denied their request for a permit to build the hill due at least in part to the hazard determination.” Considering the merits of the hazard determination, the court found: “the fact that sixty-two feet of the proposed hill would rise above the Tanner-Hiller Airport’s approach surface ... is sufficient to support the FAA’s findings that the hill would adversely affect air traffic and that the effects would be substantial — and in turn that the hill would be a hazard. The plaintiffs appealed MAC’S decision by filing in Superior Court on May 24, 2002 pursuant to G.L.c. 30A, §14.

DISCUSSION

The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Coggin v. Massachusetts Parole Bd., 42 Mass.App.Ct. 584, 587 (1997); Merisme v. Bd. of Appeals on Motor Vehicle Liab., Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God of South Dennis & Hyannis v. State Bldg. Code Comm’n., 11 Mass.App.Ct. 333, 334 (1981). In reviewing the agency’s decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Iodice v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997), citing G.L.c. 30A, §14(7); Van Munching Co. v. Alcoholic Beverages Control Comm’n., 41 Mass.App.Ct. 308, 309 (1996). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational Sch. Dist. v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982), citing Olde Towne liquor Store, Inc. v. Alcoholic Beverages Control Comm’n., 372 Mass. 152, 154 (1977). The court’s review of an agency’s decision is confined to the record. G.L.c. 30A, §14(5).
The plaintiffs must not only show that MAC violated one or more of the standards of review listed in G.L.c. 30A, §14(7), but also that their substantial rights have been prejudiced by the agency’s action. G.L.c. 30A, §14(7); Caitlin v. Board of Registration of Architects, 414 Mass. 1, 6 (1992); Amherst Pelham Regional School Committee v. Department of Education, 376 Mass. 480, 497 (1978); A. Celia, Administrative Law and Practice §1563 at 127 (1986, supp. 2002). The plaintiffs contend that MAC’S decision was (1) a constitutional error, (2) in excess of statutory authority, and (3) an error of law.

*487
I.Constitutional Error

The plaintiffs argue that MAC’s decision to deny their request for a permit to replace the hill is in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article 10 of the Massachusetts Declaration of Rights. Both state that a person’s property shall not be taken for public uses by the government without due compensation. U.S. Const, amend. V and XIV; art. 10 of the Massachusetts Declaration of Rights. The Supreme Court has held that two discrete categories of regulatory action constitute a taking. Lucas v. South Carolina Coastal Council 505 U.S. 1003, 1015 (1992). First, a taking occurs when regulatory action “compels the property owner to suffer a physical ‘invasion’ of his property.” Id. Second, a taking occurs when regulatory action “denies all economically beneficial or productive use of land.” Id. MAC’s denial of a permit to rebuild the hill is not a taking because the denial did not cause the plaintiffs’ property to be physically invaded or to lose all economically beneficial or productive use. For example, the plaintiffs can still remove the buried solid waste, cover the area of the former hill with topsoil, and grow marketable grass, trees, or produce on the land. Thus, the court finds MAC committed no constitutional error by denying the plaintiffs’ request for a permit to rebuild the hill.

II.Excess of Statutory Authority

It is settled law under G.L.c. 30A, “(a]n agency’s interpretation of its own regulation and statutoiy mandate will be disturbed only ‘if the interpretation is patently wrong, unreasonable, arbitrary, whimsical, or capricious.’ ” Box Pond Association v. Energy Facilities Siting Board, 435 Mass 408, 416 (2001), citing TBI, Inc., v. Board of Health of North Andover, 431 Mass. 9, 17 (2000), in turn quoting, Brookline v. Commissioner of the Dept of Environmental Quality Engineering, 398 Mass. 404, 410 (1986). The plaintiffs argue that MAC’s denial of their permit request exceeds the statutoiy authority of MAC because MAC only has regulatory authority over airports, not over privately owned property.
The source of MAC’s authority to promulgate regulations is G.L.c. 90, §39. It states in pertinent part that MAC is authorized to: “make and amend such reasonably general or special rules and regulations as it deems necessary.” G.L.c. 90, §39. The statute gives broad authority to MAC to supervise and control aeronautics including: “cariying out the provisions of sections thirty-five to fifty-two, inclusive, and for the purpose of protecting and insuring the general public interests and safety, and the safety of persons receiving instructions concerning, or operating or using, aircraft and of persons and property being transported in aircraft, and for the purpose of developing and promoting aeronautics within the commonwealth.” G.L.c. 90, §39.
“Statutory interpretation is a question of law for the court.” Boston Police Patrolmen’s Association, Inc. v. City of Boston, 435 Mass. 718, 719 (2002), citing Annese Elec. Servs., Inc. v. Newton, 431 Mass. 763, 764 n.2 (2000).
It is a canon of statutoiy interpretation that “legislated, expressed exceptions to a statute . . . are the only exceptions that may be recognized.” Commonwealth v. Hanedanian, 51 Mass.App.Ct. 64, 67 (2001), citing General Elec. Co. v. Department of Envtl. Protection, 429 Mass. 798, 805-06 (1999) and 2A Singer, Sutherland Statutory Construction §§47:11, 47:23 (6th ed. 2000). G.L.c. 90, §39 also expressly states: “No rule or regulation of the commission shall apply to airports, restricted landing areas, or air navigation facilities owned or operated by the United States within the commonwealth.” G.L.c. 90, §39. Thus, the Legislature did not intend MAC regulations to apply to property owned by the United States and associated with flying. The Legislature did not except property that was associated with flying and owned by private persons, by cities and towns, or by the Commonwealth from MAC regulations.
The plaintiffs’ property wraps around the northern end of the runway at Tanner-Hiller. Therefore, it is property owned by private persons associated with flying, and is subject to regulation by MAC. This court finds that MAC did not exceed its statutoiy authority by applying its regulations to the plaintiffs’ property abutting Tanner-Hiller.

III.Error of Law

The error of law standard under G.L.c. 30A, § 14(7) (c) “has generally been more narrowly applied to situations involving the erroneous construction, interpretation, or application of a statute, a constitutional provision, a lule or regulation, or a judicial decision by the agency.” A. Celia, Administrative Law and Practice, §1570 at 135, n.2 (1986, Supp. 2002). However, if the reviewing court determines that the agency based its decision upon an error of law, the court may refuse to support the agency’s decision. Van Munching at 310-11.
Pursuant to G.L.c. 90, §39, MAC promulgated the following regulation. “There shall be no fixed obstructions within 150 ft. of the center line of the landing strip nor shall there be any such obstruction extending above the required 20-1 slope within 250 ft. of the center line of the strip projected for 10,000 ft.” 702 Code Mass. Regs. §5.03.[3]
According to the regulation, starting at the halfway point of the runway’s length, there shall be no fixed obstructions of any height for 150 feet and only obstructions conforming to a 20/1 slope ratio between 150 feet and 250 feet. A 20/1 slope ratio means for every twenty feet horizontally, there may be a rise of 1 foot vertically. G.L.c. 90, §35B. Thus, at 150 feet the tallest allowed obstruction can only be 7.5 feet tall, *488 and at 250 feet the tallest allowed obstruction can only be 12.5 feet tall. Furthermore, these limitations on obstructions extend not for the actual length of the runway, but for 10,000 feet in each direction from the halfway point of the actual runway.
The plaintiffs’ proposed 80’ hill is approximately 1517 feet from the halfway point of the runway, and is, therefore, subject to the regulation’s obstruction limitations. At 1517 feet only obstructions 75.85 feet high or less are allowed under the MAC regulation. Therefore, MAC appropriately denied the plaintiffs’ request to rebuild an 80’ hill.
The plaintiffs also argue that MAC’S regulations are in conflict with the FAA’s regulations and therefore, are invalid. The plaintiffs cite G.L.c. 90, §39 as the authority for this argument.[4] FAA regulations “establish[ ] standards for determining obstructions to air navigation . . . [They] applly] to existing and proposed manmade objects, objects of natural growth, and terrain.” 14 C.F.R. §77.21(a) (2003). The plaintiffs’ proposed bill can be considered a manmade object or an object of natural growth, so it is within the scope of the FAA regulations. The FAA calculated that the plaintiffs’ proposed hill would be 62 feet above the height of allowable obstructions on the approach surface. The “approach surface” is defined as: “a surface longitudinally centered on the extended runway centerline and extending outward and upward from each end of the primary surface. An approach surface is applied to each end of [the] runway.” 14 C.F.R. §77.25(d). The runway at Tanner-Hiller is paved; therefore, the primary surface is the length of the paved runway plus 200 feet beyond each end of the runway. 14 C.F.R. §77.21(b). The approach surface is an “imaginary surfaced” under §77.25 added on to each end of the primary surface. 14 C.F.R. §77.25 and §77.25(d).
All obstructions higher than a certain height on an imaginary surface under §77.25 are considered “an obstruction to air navigation.” 14 C.F.R. §77.23(a) and §77.23(a)(5). The height of an allowed obstruction on an approach surface depends on the type of runway attached to the approach surface. According to the regulation, “the approach surface extends for a horizontal distance of: (i) 5,000 feet at a slope of 20 to 1 for all utility and visual runways; (ii) 10,000 feet at a slope of 34 to 1 for all nonprecision instrument runways other than utility; and (iii) 10,000 feet at a slope of 50 to 1 with an additional 40,000 feet at a slope of 40 to 1 for all precision instrument runways.” 14 C.F.R. §77.25(d)(2).
In other words, for a utility or visual runway, obstructions can be no higher than 18 feet at 360 feet onto the approach surface and no higher than 250 feet at 5000 feet onto the approach surface. For all nonprecision instrument runways, other than utility, obstructions can be no higher than 10.65 feet at 360 feet onto the approach surface, and no higher than 294 feet at 10,000 feet onto the approach surface.[5]
The FAA calculated the plaintiffs’ proposed hill would exceed the height of allowable obstructions on the approach surface by 62 feet. This means they calculated the hill to be 360 feet onto the approach surface. According to the above-mentioned FAA regulation, allowable obstructions at 360 feet onto the approach surface could only be 18 feet or 10.65 feet depending upon the type of runway. Thus, the FAA appropriately determined the plaintiffs’ proposed hill would be an obstruction to air navigation and denied their request for a permit.
While there may be a situation in which the FAA regulation and the MAC regulation do conflict regarding the height of allowable obstructions, in this instance they do not, and this court need not address potential conflicts between the two regulations. Thus, this court finds there is no error of law.

ORDER

For the foregoing reasons, it is hereby ORDERED that the plaintiffs’ motion for judgment on the pleadings is DENIED, and defendants’ cross-motion for judgment on the pleadings is ALLOWED.

Leonard Tanner (‘Tanner”) died on May 13, 1998. Previous to that date, Tanner-Hiller Airport was owned by Tanner.

William D. Breneman and John Breneman v. John M. Wolfson, Executor of the Estate of Leonard Tanner, Worcester Superior Court, Docket #92-2705. During the pendency of the suit, Tanner died, and the executor of his Estate was substituted as party defendant.

The plaintiffs argue that G.L.c. 90, §§35B, 35C, and 35D apply to the proposed hill. This court finds the statutes inapplicable, as they apply to the height of a “structure” within airport approaches. A “structure” is defined as: “something constructed, esp. a building or part.” Webster’s II New College Dictionary 1094 (1999). A hill, even though constructed by man, is not a building and thereby a structure. Therefore, this court will consider the plaintiffs’ argument using 702 Code of Mass. Regs. §5.03 which applies to obstructions, and a hill can appropriately be considered an obstruction.

In pertinent part G.L.c. 90, §39 states: “provided, however, that such rules and regulations shall not be inconsistent with, or contrary to, any act of the Congress of the United States relating to aeronautics or any regulations promulgated or standards established pursuant thereto.”

The court need not address allowable height obstructions on the approach surface of precision instrument runways, as Tanner-Hiller is definitely not a precision instalment runway. A precision instmment runway has an approach procedure utilizing an Instrument Landing System (“ILS”), a Precision Approach Radar (“PAR”), or a precision approach system planned and indicated by an FAA approved airport layout plan. 14 C.F.R. §77.2. Tanner-Hiller has no published instrument flight approaches or departures.