NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11473


J.M. HOLLISTER, LLC.  vs.  ARCHITECTURAL ACCESS BOARD.



Suffolk.     March 3, 2014. - July 10, 2014.

Present:  Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly,
& Lenk, JJ.


Architectural Access Board.  Handicapped Persons.
    Administrative Law, Judicial review, Substantial evidence,
    Agency's interpretation of regulation.  Statute,
    Construction.  Zoning, Variance.  Words, "Entrance."



Civil action commenced in the Superior Court Department on
June 25, 2010.

The case was heard by John C. Cratsley, J., on a motion for
judgment on the pleadings.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Daniel P. Dain for the plaintiff.
Douglas S. Martland, Assistant Attorney General, for the
defendant.
Richard M. Glassman, for Disability Law Center & others,
amici curiae, submitted a brief.


CORDY, J.  This case turns on the interpretation and

application of a Massachusetts regulation requiring that each

"entrance" to a public building or facility be accessible to persons with disabilities.[1]  See G. L. c. 22, § 13A; 521 Code Mass. Regs. §§ 5.1, 25.1 (2006).  The Architectural Access Board (board) issued a final decision concluding that each of the three doorways of a retail store in Kingston, operated by J.M. Hollister, LLC (Hollister), was a separate entrance, and therefore that each doorway was required to be accessible to persons with disabilities.  The board also denied Hollister's request for a variance from compliance with the accessibility regulations.  Hollister sought judicial review of the decision pursuant to G. L. c. 30A.[2]  A Superior Court judge affirmed the board's decision, as did the Appeals Court on appeal.  See J.M. Hollister, LLC v. Architectural Access Bd., 83 Mass. App. Ct. 513, 524 (2013) (Hollister).  We granted Hollister's application for further appellate review and also affirm the judgment of the Superior Court, because the board's decision was based on substantial evidence of meaningful differences in the use and functionality of the three doorways at issue, and because the

---

[1] This includes persons in wheelchairs, or others "who experience substantial limitations in one or more major life activities, including . . . walking."  521 Code Mass. Regs. § 5.1 (2006).  G. L. c. 22, § 13A.

[2] According to J.M. Hollister, LLC (Hollister), the parties have agreed to stay enforcement of this order pending adjudication of this appeal.

denial of the variance was based on evidence of a substantial benefit of access for persons with disabilities.[3]

Background. 1. Regulatory framework. General Laws c. 22, § 13A, empowers the board to adopt rules and regulations "designed to make public buildings and facilities accessible to, functional for, and safe for use by persons with disabilities." See 521 Code Mass. Regs. § 2.1 (2006).[4] These regulations are intended to ensure that "all such persons may have the educational, living and recreational opportunities necessary to be as self-sufficient as possible and to assume full responsibilities as citizens." Id. at § 2.2 (2006). The regulations require that "[a]ll public entrance(s) of a building or tenancy in a building shall be accessible."[5] Id. at § 25.1. "Accessible" means that the site or building "can be approached, entered, and used by persons with disabilities." Id. at § 5.1.

---

[3] We acknowledge the brief of amici curiae the Disability Law Center, Boston Center for Independent Living, Institute for Human Centered Design, and the American Association of People with Disabilities.

[4] The applicable statute and regulations are enforced by local building inspectors and by the Architectural Access Board (board). G. L. c. 22, § 13A.

[5] Prior to 1996, the regulations required only "primary public entrance(s)," and not "every public entrance(s)," to be accessible. See Iodice v. Architectural Access Bd., 424 Mass. 370, 375 (1997); 521 Code Mass. Regs. § 26.1 (1986).

See G. L. c. 22, § 13A.[6]  Where compliance with the regulations

is necessary, an owner or tenant may seek a variance if it

believes "that full compliance with 521 [Code Mass. Regs.] is

impracticable."[7]  521 Code Mass. Regs. § 4.1 (2006).

2.  Store design.  The facts of this case are largely

undisputed on appeal.  Hollister is a clothing retailer that

leases and operates a store at the Independence Mall in

Kingston.  When Hollister opened the store in 2005, it received

a building permit to replace a fully accessible mall-grade

interior entrance with a raised "porch" design common to many

Hollister stores.[8]  This entryway through the porch is designed

to look like a "California surf shack," consisting of two steps

leading up to a roofed porch that extends outward from the wall

of the store into the mall.  Hollister, 83 Mass. App. Ct. at

514.  The porch contains large plants, pictures, and other

---

[6] Any construction, remodeling, or alterations of or in
public buildings must comply with these statutory and regulatory
requirements.  See G. L. c. 22, § 13A; 521 Code Mass. Regs.
§§ 3.1, 3.2, 3.3 (2006).

[7] Compliance is impracticable where it would be
"technologically unfeasible" or where compliance "would result
in excessive and unreasonable costs without any substantial
benefit to persons with disabilities."  521 Code Mass. Regs.
§ 5.1.

[8] Ten other stores in Massachusetts operated by Hollister
use this raised porch design.

decorative items.[9]  At the back of the porch, a patron has two options:  descend two steps to the left, through a doorway to the men's section ("Dudes"), or descend two steps to the right, through a doorway to the women's section ("Bettys").

The porch doorway is not accessible to persons with disabilities because it requires the use of stairs leading up to the porch and then down again into the store.[10]  On either side of and in close proximity to the porch are two accessible doors at mall grade that lead directly into the store without steps or ramps.  Both side doorways are designed to look like plantation shuttered windows, and are equipped with automatic door openers.[11]  A patron who enters through the left accessible door

---

[9] Porches at other Hollister stores occasionally include chairs and magazines.

[10] Some Hollister stores use the same theme of a "California surf shack" porch but have no stairs.

[11] At the time of the complaint instigating the board's review of the store design, there was only one accessible doorway, to the left of the central porch.  This doorway was nonfunctional on several occasions.  To the right of the porch was an emergency exit door that was not used as an entrance. This lack of reliable functionality of the left door, which was the only accessible door at the time, informed the board's initial decision and was a partial basis for remand by the Superior Court judge.  After the original complaint had been filed but before the board had held its first hearing after remand, Hollister altered the emergency exit door to the right of the porch so it could function as a second accessible door. Hollister also maintains that the problems with the left door have been resolved.  On appeal, we assume that there are two functional accessible doors adjacent to the porch entrance and accordingly omit details regarding when one or both of the

will arrive in the same location as if he or she had entered through the porch and descended the stairs to the left, whereas a patron who enters through the right accessible door will arrive in the same location as if he or she had descended the stairs to the right. See Hollister, 83 Mass. App. Ct. at 514. In other words, a patron entering through the porch has a choice of which section of the store to enter, whereas a patron using one of the side accessible doorways enters directly into a particular section.

3. Procedural history. In January, 2008, Jennifer Niles, a wheelchair user, filed a complaint with the board alleging that the Kingston store was not accessible. See 521 Code Mass. Regs. §§ 2.3.1, 4.2 (2006); note 11, supra. In June of that year, while the board was investigating the complaint, Hollister applied for a variance from its obligation to make all public entrances to the store handicapped accessible. See id. at § 4.1. The board denied the variance application because Hollister had failed to prove that it was impractical to make the store accessible. See id.

Hollister appealed from the denial of the variance and requested an adjudicatory hearing before the board. See id. at

accessible doors were available, except where relevant. See J.M. Hollister, LLC v. Architectural Access Bd., 83 Mass. App. Ct. 513, 514-516 (2013) (Hollister) (providing greater detail on functionality and availability).

§ 4.1.1(a).  Hollister alleged that a variance was not needed
because the design of the store complied with the requirements,[12]
and alternatively, that if a variance was required, it was
deserving of one because the cost of renovating the central
porch to make it accessible would be excessive.  In November,
2008, after a hearing, the board issued a decision concluding
that Hollister was not in compliance with 521 Code Mass. Regs
§ 25.1.  The board did not specifically state in its decision
whether it considered each of the three doorways on the façade
to be a separate entrance, such that the inaccessibility of the
central porch doorway alone constituted a violation, or whether
the noncompliance stemmed from the lack of functionality of the
accessible doorway(s) adjacent to the central porch.  The board
further affirmed its denial of the variance, because Hollister
had created the noncomplying condition itself, and it had failed
to show that the cost of compliance would be excessive without
substantial benefit to persons with disabilities.  The board
accordingly ordered Hollister to bring the store into

---

[12] Specifically, Hollister asserted that the multiple
doorways on the store's façade were essentially one
comprehensive entrance, and that the regulations permit an
entrance to include inaccessible elements such as stairs, as
long as an accessible doorway is also provided.  Accordingly, it
claimed that the only issue in the complaint was the
functionality of the accessible doorway, which had been
resolved.

compliance. See G. L. c. 22, § 13A; 521 Code Mass. Regs. §§ 1.00, 4.00, 26.00 (2006).

Hollister sought judicial review of the board's decision, and in August, 2009, a judge in the Superior Court remanded the matter to the board for further proceedings, because he concluded that the administrative record was not sufficiently developed. The judge asked the board to revisit the question whether the three doorways constituted separate entrances or a single integrated entrance, and to reconsider whether Hollister should be granted a variance.

On remand, the board held an evidentiary hearing. It determined that the three separate doorways on the store's façade (the left accessible door, the central porch, and the right accessible door) constituted three separate entrances under the regulatory definition of "entrance" as an "access point," because each side doorway provided access to only one side of the store, whereas the central, raised doorway provided access to both sides of the store. See 521 Code Mass. Regs. §§ 5.1, 25.1. The board further concluded that a variance was not appropriate because modification was not impracticable.[13]

_____

[13] The board determined that compliance was not technologically infeasible, as Hollister had constructed stores with the porch design but without steps in other locations, and that the substantial benefit to persons with disabilities outweighed the cost of compliance, particularly where Hollister had created the noncompliant condition. See G. L. c. 22, § 13A;

The board therefore denied Hollister's request for a variance and ordered the store again to bring its central porch entrance into compliance with 521 Code Mass. Regs. § 25.1.

Hollister appealed the board's decision to the Superior Court and moved for judgment on the pleadings. In July, 2011, a judge affirmed the board's decision that the doorways constituted separate entrances, because this decision was based on substantial evidence and a reasonable interpretation of the regulations.[14] Further, the judge found that there was substantial evidence to support the denial of a variance.[15]

Hollister sought review of the Superior Court ruling by the Appeals Court. See Hollister, 83 Mass. App. Ct. at 514. In a published decision, the Appeals Court concluded that the board's finding that "the three doors were separate entrances because

_____

521 Code Mass. Regs. § 4.1 (2006). Further, the board was not persuaded that the high cost estimates Hollister had provided for modification were credible.

[14] Specifically, the judge reasoned that the board's rejection of Hollister's analogy to revolving doors and turnstiles, and to other approved projects in Boston, was not arbitrary or capricious, because the board is empowered to "consider the distinct uses of each access point" in any given façade.

[15] The judge reasoned that the board was entitled to rely on the testimony of a disabled patron to determine that there would be a substantial benefit to such patrons of having an accessible porch, and to use the knowledge and experience of its members to conclude that the cost estimates provided by Hollister were not credible.

each door constituted a separate access point to the store" was not "arbitrary, capricious, or contrary to law," given the definition of "entrance" in the regulations.  Id. at 517-518.  The board was not required "to consider a door which is accessible by stairs alone to be the same entrance as doors that are physically separate and accessible," despite Hollister's contention that the provisions permitting turnstiles and revolving doors, and the contemplation of stairs as part of an accessible entrance, so required.  Id. at 518-519.  Rather, the court deferred to a reasonable interpretation of the regulatory language adopted by the board and noted that this interpretation was consistent with the remedial purposes of the law, reflected in the legislative history, that all buildings be entirely accessible to persons with disabilities.[16,17]  Id. at 520, 522-523.

---

[16] The Appeals Court rejected Hollister's claim that the board erred and exceeded its statutory authority in considering "experiential factors."  See Hollister, 83 Mass. App. Ct. at 523.  It concluded that the board could appropriately consider grade, level, distance, and experience, and that, contrary to Hollister's assertion, the regulations provided "a concrete, bright line measure, [to] ensure[] accessibility."  Id.

[17] In dissent, one Appeals Court judge raised concerns that the board committed an error of law because there was insufficient support for its conclusion that each door framed within a single entryway constituted a separate entrance, and that the court's upholding of this decision could have far-reaching consequences for buildings throughout Massachusetts.  See Hollister, 83 Mass. App. Ct. at 524, 526-527 (Berry, J., dissenting).

The Appeals Court also affirmed the denial of the variance, noting that, where there is a substantial benefit to persons with disabilities in requiring compliance, the cost of compliance is irrelevant.  See id. at 523-524, quoting Pyramid Co. of Hadley v. Architectural Barriers Bd., 403 Mass. 126, 131 (1988).  Given the board's finding of a substantial benefit, it was reasonable for it to deny the variance, regardless of the credibility and extent of the costs to Hollister.  Hollister, 83 Mass. App. Ct. at 524.  We granted Hollister's application for further appellate review on both issues.

Discussion.  Like the courts below, we review the board's decision pursuant to G. L. c. 30A, § 14 (7), and will not disturb the decision unless it was made in excess of the board's statutory authority; is unsupported by substantial evidence;[18] or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  Where, as here, the Legislature has granted broad authority to the board, and the board has interpreted a regulation that it has been tasked by the Legislature with promulgating, we afford "considerable deference" to the board's interpretation of both its enabling

---

[18] Substantial evidence is such evidence, "within the record developed before the administrative agency, . . . as a reasonable mind might accept as adequate to support the agency's conclusion."  Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n, 401 Mass. 713, 721 (1988), citing Labor Relations Comm'n v. University Hosp., Inc., 359 Mass. 516, 520-521 (1971), and G. L. c. 30A, § 1 (6).

statute and its own regulation.  Ten Local Citizen Group v. New England Wind, LLC, 457 Mass. 222, 228 (2010), quoting Warcewicz v. Department of Envtl. Protection, 410 Mass. 548, 550 (1991). See Iodice v. Architectural Access Bd., 424 Mass. 370, 373 (1997).  This deference, however, is not without limit.  Board of Appeals of Woburn v. Housing Appeals Comm., 451 Mass. 581, 590 (2008), and cases cited.  Hollister bears the burden of showing that the board's interpretation is "not rational."  Ten Local Citizen Group, supra.

1.  Number of entrances.  Hollister essentially makes two arguments, largely identical to those it advanced before the Superior Court and the Appeals Court, regarding the meaning of an "entrance" under 521 Code Mass. Regs. § 5.1.  First, it asserts that the board's interpretation of the term "entrance" and related terms within the regulations was "legally untenable," because the regulations clearly consider adjacent doorways on the same façade to be a single entrance.  See id. at §§ 5.1, 26.2, 26.3 (2006).  Second, Hollister claims that the board's determination that the three doorways constitute separate entrances is not supported by substantial evidence and is rooted instead in the board's unjustified consideration of a disabled patron's "experience" in accessing the store.  We are not persuaded by either claim in the circumstances of this case.

Under 521 Code Mass. Regs. § 25.1, each "public entrance[]" of a . . . tenancy in a building [must] be accessible."  An "entrance" is defined as "[a]ny access point to a building or portion of a building . . . used for the purpose of entering. . . includ[ing] the approach walk,[19] stairs, lifts, ramp or other vertical access leading to the entrance platform; the entrance platform itself; vestibules, if provided; the entry door(s) or gate(s); and the hardware of the entry door(s) or gate(s)."  Id. at § 5.1.[20]

Hollister argues that multiple doorways on the same façade must be deemed a single entrance, and where two of the three doorways are accessible, it was inappropriate for the board to conduct further inquiry into the nature of the third doorway. Hollister points to the inclusion in the definition of "entrance" of "stairs, lifts, ramp or other vertical access" as supporting its contention that steps and other inaccessible design elements may be part of an accessible multi-door entrance.  See 521 Code Mass. Regs. § 5.1.  Hollister reads the

_____

[19] "Walk" is defined as "[a]n interior or exterior pathway with a prepared surface intended for pedestrian use, including but not limited to general pedestrian areas such as plazas, courts, and crosswalks."  521 Code Mass. Regs. § 5.1.

[20] The regulations further require that "[e]ntrance(s) . . . have a level space on the interior and exterior of the entrance doors."  521 Code Mass. Regs. § 25.2 (2006).  "Level" is defined as "[s]loped no more than 1:50 or 2%," and "space" is defined as "[a] definable area, e.g., room, . . . assembly area, entrance, . . . alcove, courtyard, or lobby."  Id. at § 5.1.

regulations too narrowly.  The board does not dispute that the regulations plainly enable it to consider multiple doors as a single entrance, including where some of the doorways contain inaccessible elements such as steps.  But the board is not required to consider every combination of accessible and inaccessible doorways as a single entrance, particularly where they provide different use patterns, as the board found here. See Iodice, 424 Mass. at 375 ("Nothing in the wording or context of the access regulations supports the plaintiff's emphasis"). Mere proximity of an inaccessible doorway to an accessible one does not mean that the board must end its inquiry.

The board contends that its assessment of what constitutes an "access point" and therefore an "entrance" instead involves consideration of the functionality and use of each doorway, and of differences in such functionality and use between adjacent doorways.  See Iodice, 424 Mass. at 376 (board must conduct practical, functionality-based assessment of public use).[21]  See also 521 Code Mass. Regs. § 5.1 (defining "use" as "[p]urpose for which the building is designed, used or intended to be used").  Where the term "access point" is not defined in the regulations, the board is entitled to exercise its authority through the decisional process to define it further.  See

---

[21] Although Iodice, 424 Mass. at 371, 376, involved an earlier version of the regulations, its general framework remains applicable.

generally <u>Hastings</u> v. <u>Commissioner of Correction</u>, 424 Mass. 46,
49 (1997).

The board's emphasis on use pattern in determining whether
multiple doorways constitute a single or multiple entrances is
apparent in, and indeed supported by, its rejection of
Hollister's analogy of its raised porch design to turnstiles and
revolving doors, which are specifically permitted under the
regulations as part of multi-door entrances.  Under 521 Code
Mass. Regs. §§ 26.2, 26.3 (2006), an inaccessible revolving door
or turnstile may be part of an accessible entrance if an
accessible door or gate is "provided adjacent to" the revolving
door or turnstile and it "permit[s] the same use pattern."
Hollister contends that these provisions demonstrate that the
board must consider an inaccessible doorway and an adjacent
accessible doorway as a single accessible entrance.  We
disagree.  First, these provisions pertain to two specific types
of inaccessible entryways and do not require the board to extend
such treatment to other inaccessible designs, such as
Hollister's raised porch.[22]  Second, and more importantly,
Hollister ignores a key component of these narrow provisions,

---

[22] Notably, revolving doors and turnstiles serve important,
non-aesthetic purposes justifying their unique treatment, such
as climate control, crowd control, and security measures.  The
raised porch, in contrast, serves no functional purpose.  Cf.
<u>Colorado Cross-Disability Coalition</u> v. <u>Abercrombie & Fitch Co.</u>,
835 F. Supp. 2d 1077, 1078, 1081 (D. Colo. 2011).

which require not only that an accessible doorway accompany the revolving door or turnstile, but also that the two entryways provide the "same use pattern."  See 521 Code Mass. Regs. §§ 26.2, 26.3.  That is, for example, when a person enters through the revolving door or turnstile, that person ends up in essentially the same place as he or she would, had he or she used the accessible doorway.[23]  The board's rejection of this comparison, where entering through the central porch gives the patron the option of arriving at a place different from the one

---

[23] At the hearing before the board, Hollister presented several examples of locations in Boston where the board had approved entrances consisting of an inaccessible revolving door accompanied by at least one accessible doorway.  Hollister argues on appeal that the board should have given these examples precedential value and viewed Hollister's porch design as analogous to these multi-door entrances.  In rejecting Hollister's analogy of its raised porch design to a revolving door, however, the board reasonably determined that these examples were not persuasive, as each one of them contained a revolving door at grade level with an adjacent accessible door, compliant with the specific provisions of 521 Code Mass. Regs. § 26.2 (2006).  Even if the board did find some merit in Hollister's analogy to revolving doors, the board was free to reach a different conclusion on the facts presented here, as long as it was not arbitrary or capricious.  Here, the board was confronted with a unique design feature, and its decision not to rely on its prior approvals of dissimilar entrances was a reasonable one.

Similarly, we are unpersuaded by Hollister's assertion that the board should have given weight to the fact that ten other building inspectors in Massachusetts believed that this design complied with the regulations.  "[T]he board [is] the ultimate arbiter of regulatory compliance."  Iodice, 424 Mass. at 374.  See G. L. c. 22, § 13A.  It was therefore within the board's discretion to either credit or reject the inspectors' conclusions.

arrived at by entering through one of the accessible side doors, supports its reasonable determination that differences in use pattern between doorways may signal multiple entrances.

We are persuaded, as the Appeals Court was, that the board's interpretation of the meaning of "access point" is appropriately rooted in the legislative history of G. L. c. 22, § 13A, and the mandate of ensuring full accessibility.  See Hollister, 83 Mass. App. Ct. at 521-523.  Although Hollister's reading of the regulations is also a plausible one, it is not the only one, and we "may not displace [the] board's choice between two fairly conflicting views."  Southern Worcester County Regional Vocational Sch. Dist. v. Labor Relations Comm'n, 386 Mass. 414, 420 (1982).  To the extent that the board considered the use and function of each doorway in determining whether the three doorways constituted separate entrances, rather than merely concluding that the combination of an accessible and inaccessible doorway per se constituted a single accessible entrance, the board's interpretation of the scope of its authority was reasonable and not arbitrary or an abuse of discretion, given the significant differences between the three doorways, as discussed below.  See Hollister, 83 Mass. App Ct. at 520-521.

Further, the board employed its interpretation of an "access point" to reach a reasonable conclusion supported by

substantial evidence.  It heard evidence about each doorway's particular use and function, and observed meaningful differences in functionality, use, and design that, under a reasonable interpretation of the regulations, rendered each doorway a separate and discrete access point into the store.  Most significantly, the board found, based on testimony, photographs, and architectural renderings, that entering through either of the side accessible doorways placed a patron in a location within the store different from the one the patron would be if he or she entered through the central porch.  A patron entering through one of the accessible doors would find himself in one of the two clothing sections, with a fifty per cent chance of arriving in the desired section as a first-time visitor, whereas a patron entering through the central porch would be able to make an informed choice as to which section to enter.  In this respect, patrons did not arrive in the same place through the various doorways, and therefore those doorways did not provide the same usage pattern.  The porch design, the board reasoned, gave able-bodied patrons an advantage in being able to arrive in an optimal interior location.  This finding alone is enough to constitute substantial evidence supporting the board's conclusion that each doorway represented a separate access point.  See Seagram Distillers Co. v. Alcoholic Beverages Control Comm'n, 401 Mass. 713, 721 (1988).

In addition, although the board did not specifically reference the design of the doorways as a basis for its conclusion, the evidence it heard regarding the discrete aesthetic presentation of each doorway likely also informed its determination that the three doorways did not function as a single entrance.  Although the regulations are indeed "'use' rather than 'design' regulations," Iodice, 424 Mass. at 375, design may be a reasonable consideration to the extent that it signals and informs use.  The central porch design "creates an aesthetic which is a valuable part of . . . Hollister's branding efforts" and is intended "to convey a certain ambiance and appearance that makes the store inviting as a whole."  Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co., 835 F. Supp. 2d 1077, 1078, 1081 (D. Colo. 2011).  But this "surf shack" design is not extended to the accessible side doorways, which instead are disguised as windows.  See id. at 1082.  The accessible doorways therefore present themselves as a less than fully participatory way to enter the store.  Cf. Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co., 957 F. Supp. 2d 1272, 1276, 1281 (D. Colo. 2013) ("visual impression is of a main, decorated, primary but inaccessible entrance in the center" that is "qualitatively different [from] or superior" to "smaller, inferior, undecorated accessible entrances to each

side"); Colorado Cross-Disability Coalition, 835 F. Supp. 2d at 1082.

These design distinctions are exacerbated by the fact that the steps to the porch serve no functional purpose. Cf. Colorado Cross-Disability Coalition, 835 F. Supp. 2d at 1078 (steps leading to porch of Hollister store "are purely ornamental"). Especially where, as here, the inaccessible entryway is one of Hollister's own design, and not a function of any unique, preexisting feature of the site, there is no justification for having such a meaningfully different inaccessible entryway that visually and functionally signals lesser access to the store. Cf. id. at 1082.

Given the differences in use, treatment, and presentation of the central porch as compared to the accessible side doors, it was reasonable for the board to conclude that these doorways each constituted different access points and therefore separate entrances. See New Boston Garden Corp. v. Assessors of Boston, 383 Mass. 456, 466 (1981) (substantial evidence is such evidence "as a reasonable mind might accept as adequate to support a conclusion"). Indeed, this is the same reasoning and result of a Federal District Court decision addressing the same question regarding the compliance of Hollister's raised porch design with the Americans with Disabilities Act (ADA) design standards. See Colorado Cross-Disability Coalition, 835 F. Supp. 2d at 1082-

1083 (central porch entryways of two Hollister stores violate Title III of ADA because side accessible doors "do not permit the same pattern of use," and inaccessible porch design "unnecessarily . . . excludes people using wheelchairs from full enjoyment of the aesthetic for that brand").[24]  See also Colorado Cross-Disability Coalition vs. Abercrombie & Fitch Co., U.S. Dist. Ct., No. 09-cv-02757, slip op. at 2 (D. Colo. Feb. 26, 2014) (central porch entryways of 231 Hollister stores violate ADA); Colorado Cross-Disability Coalition, 957 F. Supp. 2d at

_____

[24] Hollister contends that this Federal litigation is not analogous because it involves different rules and legislative history.  The Americans with Disabilities Act (ADA) design standard applicable to that litigation in fact closely resembles 521 Code Mass. Regs. §§ 5.1, 25.1.  See 28 C.F.R. § 36.406 Appendix A, 1991 Standard for Accessible Design 3.5 (defining "entrance" as "[a]ny access point to a building or portion of a building or facility used for the purpose of entering. . . . includ[ing] the approach walk, the vertical access leading to the entrance platform, the entrance platform itself, vestibules if provided, the entry door[s] or gate[s], and the hardware of the entry door[s] or gate[s]").  In that case, the parties presented nearly identical arguments for and against a finding of compliance with the ADA design standards as those presented here.  Colorado Cross-Disability Coalition, 835 F. Supp. 2d at 1079-1081.  Although we are not bound to follow the Federal court's reasoning and decision, we consider that litigation useful by way of analogy.  The District Court judge concluded that 231 Hollister stores throughout the United States violated the ADA, and required Hollister "to remove, ramp, or close off all of the elevated entry doors by January 1, 2017, at a rate of at least 77 stores each year beginning on January 1, 2014."  Colorado Cross-Disability Coalition vs. Abercrombie & Fitch Co., U.S. Dist. Ct., No. 09-cv-02757, slip op. at 2 (D. Colo. Feb. 26, 2014).  That decision is currently on appeal to the United States Court of Appeals for the Tenth Circuit.  If the plaintiffs prevail before the Tenth Circuit, Hollister will be required to modify its raised porch design in stores across the country, regardless of our decision.

1274-1275, 1281. Giving deference to the board's interpretation of its regulations, we conclude that the board was warranted in finding that each doorway constituted a separate access point. Even though "reasonable minds could accept" an alternative conclusion, such minds could similarly find the board's findings and conclusion plausible and adequately supported, and we therefore will not disturb them. See Iodice, 424 Mass. at 376.

We address briefly Hollister's contention that the board's decision was based in its consideration of the subjective "experience" of a disabled store patron, a nebulous concept that creates too much uncertainty for future architectural and design decisions. There may be a fine line between consideration of the objective elements of use and functionality and the more subjective nature of one's experience with and in the store. However, we need not determine the extent to which the experiences of a person with disabilities may inform the board's analysis of what constitutes an entrance. The board's decision here was based on a reasonable interpretation of the applicable regulations and was supported by substantial evidence of the use and functionality of the doorways, demonstrating that the raised porch at the center of the store's façade contained a unique design and use pattern that meaningfully distinguished it from

the accessible doorways on either side of it.[25]  The board

reasonably could conclude from the evidence before it that the

three doorways were not integrated but rather constituted

separate access points into the store in both form and

function.[26]  Accordingly, we affirm the board's conclusion on

this ground.

2.  Denial of variance.  Hollister also challenges the

board's denial of its request for a variance.  It contends that

the denial was not supported by substantial evidence because the

limited testimony regarding the time savings a disabled patron

would have if he or she were able to enter through the central

porch and choose which section to enter, rather than entering

the wrong section and having to travel to the correct one, did

not rise to the level of articulating a "substantial benefit."

---

[25] Assessment of the physical location at which a given access point places a patron is an objective consideration not entirely dependent on the content of the surroundings once inside.  To the extent that the board concluded that a patron entering through the left accessible door, the central porch, and the right accessible door arrived inside the door at distinctly different locations, this consideration was not unreasonable or in error.

[26] Were experience a primary or perhaps exclusive factor in the board's analysis, we would share the concern of Hollister and the dissenting justice of the Appeals Court that inquiries into adequate accessibility would be overly subjective and present challenges for architectural planning and design.  See Hollister, 83 Mass. App. Ct. at 526-527 (Berry, J., dissenting).  However, experience did not play such a significant role in the board's analysis here as to render the board's action an abuse of discretion.

We agree with the Superior Court judge that there was substantial evidence to support the board's finding.

Where compliance with the regulations is necessary, an owner or tenant may seek a variance if it believes "that full compliance with 521 [Code Mass. Regs.] is impracticable."  521 Code Mass. Regs. § 4.1.  Compliance is impracticable where it would be "technologically unfeasible" or where compliance "would result in excessive and unreasonable costs without any substantial benefit to persons with disabilities."[27]  Id. at § 5.1.

The board denied Hollister's request for a variance because it concluded that there would be a substantial benefit to persons with disabilities from access to the central porch.  See 521 Code Mass. Regs. § 5.1.  The board based this conclusion primarily on the testimony of a patron with disabilities who stated that the lack of access to both sections of the store from each accessible door made it more difficult for him to shop at Hollister.  Specifically, he testified that if he entered through the men's side and wanted to get to the women's side, or vice versa, he would "probably just turn around and leave, or . . . go and see if there was another entrance on the other side [of the storefront]" to the section he wanted to access.  He

---

[27] Hollister concedes that modification is not technologically infeasible, given that it has numerous other locations with grade-level, accessible "porch" entrances.

noted that other Hollister stores had accessible central entrances that preserved the "feel" of the porch entrance but allowed disabled patrons to have "the same experience as the general able-bodied public."

It is not our role to review the board's evidence de novo or substitute our own assessment of the evidence's credibility or the permissible inferences that may be made. See Medi-Cab of Mass. Bay, Inc. v. Rate Setting Comm'n, 401 Mass. 357, 369 (1987). Given the board's determination that the patron was a credible witness, it was reasonable for it to rely on such testimony as sufficient support for its conclusion. See Quintal v. Commissioner of the Dep't of Employment & Training, 418 Mass. 855, 860 (1994); Lycurgus v. Director of the Div. of Employment Sec., 391 Mass. 623, 627-628 (1984). Cf. Pyramid Co. of Hadley, 403 Mass. at 130 (handicapped persons' testimony of desire to attend classes, parties, and community functions held on mezzanine level and to supervise children using spaces on that level constituted substantial evidence supporting board's determination that substantial benefit would be gained by providing elevator access to that level).

Although the board went on to consider the costs of compliance in its decision, the determination that a substantial benefit could be had by persons with disabilities by providing access through the central porch ends the inquiry into whether a

variance may be granted. "A cost-benefit analysis is not relevant if [as in this case] the board determines that there would be substantial benefit. Only if there is no substantial benefit does the issue of the cost of complying with the regulation become important." See Hollister, 83 Mass. App. Ct. at 523-524, quoting Pyramid Co. of Hadley, 403 Mass. at 131. Accordingly, we need not address Hollister's claims, whether credible or not, of the excessive cost of modification. The board's denial of the variance was based on substantial evidence, and we therefore will not disturb it.

Conclusion. The judgment of the Superior Court is affirmed.

So ordered.